## THOMAS U. WHITE *vs.* JOHN G. CAMP.

A PLEA, filed under oath, alledging the failure or want of consideration of a bond, note or other instrument of writing, throws the onus of proving the consideration of the instrument sued on, upon the plaintiff; but the consideration can be inquired into only between such parties as it might have been at Common Law.

In an action by the endorsee against the maker, a plea, under oath, denying the consideration of the instrument sued on, does not throw the onus of proving the consideration on the plaintiff.

When a bill or note is endorsed in blank, the presumption of law is, that it was endorsed on the day of its date, or at least before it was due; and if the defendant alledges that it was endorsed after it was due, the burthen of proof is on him to show it.

The affidavit of a want or failure of consideration, should be drawn in issuable terms, and confined to a single allegation, and should not be in the alternative or double; it should be so construdted as to apprise the plaintiff what facts he would be required to prove on the trial.

ERROR to Leon Circuit Court.

The facts are contained in the opinion of the Court, delivered by Justice Hawkins.

*J. T. Archer*, for plaintiff in error:

1. The Court below erred, in determining upon the 2d plea, affidavit, and notice of special matter, that it was necessary for the

White *vs.* Camp.

plaintiff to prove a consideration from Reese, the payee, to defendant, the maker.

*First.* The 24th section of the act to amend an act regulating Judicial proceedings, approved November 23d, 1829, was intended to add to the force and effect of promissory notes; but the effect of this section has been, to *impair* their force and effect, under the construction that, a denial under oath, of the consideration of a note by the maker thereof, overcomes the evidence of consideration contained in the note itself, and renders it necessary for the holder to produce *other* evidence of a consideration, before he can recover. Whether this construction be the correct one, is not necessary to be discussed or decided in this case. The effect of it is, to permit the maker of a note, on issues touching the consideration or execution of the same, to become a witness in his own case, while the same privilege is denied to the holder; but it does not allow any defences to be set up, which were not defences before the statute was passed; it affects the *proof* only.

The plaintiff claims as bona fide holder, under an endorsement in blank, by Reese, the payee; and it is clear and unquestionable, (if the statute affects only the rules of evidence,) that a want of consideration from Reese to Camp, cannot affect the plaintiff's right to recover.

The fraud alledged in the second plea, which prevented a demurrer, is not sustained by proof—the affidavit of defendant to the truth of the plea not being evidence, either at common law or under the statute, to support the allegation of fraud.

*Second.* The facts detailed in the notice of special matter, and sworn to by the defendant, shew that there was a consideration given him for the note, and disprove the allegations of the 2d plea. The Court should, therefore, have given judgment for the plaintiff, in the issue upon the second plea, affidavit, and notice of special matter.

II. The Court erred, in determining upon the third plea, affidavit and notice, that it was incumbent on the plaintiff to prove the consideration of the endorsement to plaintiff.

The 34th section of the same act, provides, that it shall not be necessary for the assignee or endorsee of any instrument, assignable by law, to set forth in the declaration, the consideration upon which such assignment or endorsement was made, nor prove such consideration, unless the same shall be impeached by the defendant under oath. This section does not provide for an inquiry into the conside-

ration of an endorsement or assignment of any negotiable or assignable instrument, where, by the old law, such inquiry would not be permitted. The most that can be claimed for the defendant, under this section, is the right, upon such inquiries into the consideration of the said endorsement as are authorized by the common law, to give in evidence his own affidavit, so as to put the *onus probandi* upon the plaintiff.

If this section, in like manner as the 24th, cannot be construed to create any new grounds of defence, and at furthest, can only be considered to amount to an alteration of the rules of evidence, then the consideration from plaintiff to Reese cannot be inquired into by defendant. There is no privity of contract between plaintiff and defendant; and it is immaterial to defendant whether the plaintiff got the note from Reese, with or without consideration.

The allegation of fraud, (which prevented a demurrer to the 3d plea,) was not proved; and it is perfectly clear that, in the issue upon the 3d plea, judgment should have been given for the plaintiff.

III. On the pleadings and evidence, the plaintiff was entitled to recover.

The affidavit made by the defendant, contains various statements; is drawn in the alternative; is unintelligible, double, uncertain, and not in conformity to the statute. It should not have been received, and is, in its present shape, no evidence. The only legal evidence in the case, is the note and proof of the endorsement by Reese; and this evidence is sufficient to determine all the issues in favor of the plaintiff.

No counsel for defendant.

HAWKINS, Justice:

The action in the Court below is of assumpsit, by Thomas U. White, the plaintiff in error, endorsee, against John G. Camp, maker of the following promissory note:

"$127 97-100.            SANDUSKY CITY, Sept. 6, 1839.

"Due on demand to William T. Reese or order, for value receiv-
"ed, one hundred and twenty-seven 97-100 dollars.

"JOHN G. CAMP.

(Endorsed)—"W. T. REESE."

The declaration contains a count upon the note, money counts, and account stated.

The defendant, Camp, put in three pleas: 1st, Non assumpsit.

2d, That the promissory note sued upon was given and made without any lawful or valuable consideration, and was obtained by the payee, Reese, by fraud, misrepresentation, concealment, covin, and deceit, and that the said note was, and is void, &c.   3d, That the endorsement or assignment of the note was made without any lawful or valuable consideration, and in fraud of the rights and interest of the defendant, to deceive and defraud him in the premises.

Accompanying the pleas, there was a notice to plaintiff that, under the general issue pleaded, the defendant would prove that said William T. Reese, one Thomas Neill, Isaac A. Mills, and defendant, owned as tenants in common, a certain tract of land in Sandusky, Erie county, in the State of Ohio, and attempted to make division of said lands; and said note was given for the supposed difference due said Reese in said division; that since then, one Owen Follet, of whom said Reese purchased, has instituted proceedings to get said Reese's share of land, said Reese never having paid him the purchase money; and that the attempted division of said land, on which said note was predicated, is nullified and void, in consequence thereof; and that the same was, therefore, given without any consideration; or if there was any consideration, it has totally failed.   That said Reese had since been declared a bankrupt; that the endorsement of the note to plaintiff was fraudulently made, by collusion, with knowledge and notice by plaintiff of the facts as before stated; that Reese was largely indebted to him, the defendant, at the time of the transfer of the note, and before, for defendant's blank endorsements, given to him for specified purposes, which Reese did not comply with, but made use of the same, by getting them discounted, and misapplied the proceeds, not as he engaged appropriating it, to pay for said land to Follet, and so release it, so as to effectuate said division; all of which the defendant alledges plaintiff had notice of, and that defendant would rely on said facts, in bar of the action.

Appended to this notice was an affidavit, in which the defendant denies, on oath, the consideration of said note declared on; and also saith, that if the consideration was legal and valid, the same has totally failed.   He further denies, on oath, the consideration of said assignment or endorsement of the note, and that he believed the facts, as set forth in the notice, are true.

The plaintiff replied by similiter to the first plea, and takes issue on the second and third.

The parties waived a trial by jury, and put themselves upon the

judgment of the Court. By the bill of exceptions, it is shown, that the plaintiff offered in evidence in support of his declaration the note sued upon, and satisfactorily proved the signature of the endorser, Reese; and thereupon Camp, the defendant, after exhibiting his affidavit, made under the statute, asked the Court to determine upon the pleadings, that the plaintiff to recover must prove the consideration for which the note was given by Camp to Reese, under the second plea, and notice of special matter; and under the third plea and notice as aforesaid, must prove the consideration of the assignment or endorsement by Reese to plaintiff; and the Court so determined, and gave judgment accordingly for defendant.

To that opinion the plaintiff excepted; and thereupon a writ of error issued.

The counsel for the plaintiff in error assigns the following errors:

*First.* The Court erred in determining that, upon the second plea, and affidavit, and notice, it was necessary for the plaintiff to prove the consideration of the note, before he could recover.

*Second.* The Court erred in determining, that upon third plea, affidavit and notice, it was incumbent upon plaintiff to prove consideration of the endorsement or assignment, from Reese to him.

*Third.* That upon the pleadings and evidence in the cause, plaintiff was entitled to judgment.

The defendant, in the Court below, has attempted to avail himself of the provisions of the statutes of Florida, as to the proof of the execution and consideration of bonds, bills, notes, *et cetera*, contained in the twenty-fourth and thirty-fourth sections of the act, in relation to judicial proceedings, passed November 23d, 1829. Duval's Compilation, 95 and 96.

Section 24, after stating that all promissory notes, and other writings, not under seal, shall have the same force and effect as bonds and instruments under seal, says that: It " shall not be necessary " for the plaintiff to prove the execution of any bond, note, or other " instrument of writing, purporting to have been signed by the de- " fendant, nor the consideration for which the same was given, un- " less the same shall be denied by plea, put in and filed as aforesaid, " (i. e. on oath,) and filed before the cause is called upon the ap- " pearance docket."

Section 34th declares: " That the assignee or endorsee may bring " suit in his own name; nor shall it be necessary for the assignee or " endorsee of any instrument, assignable by law, to set forth in the

White *vs.* Camp.

" declaration the consideration upon which such assignment or en-
" dorsement was made ; nor to prove such consideration, unless the
" same shall be impeached, by the defendant, under oath."

The instruments " assignable by law," referred to in this, and the
thirty-third section of the same act, are bonds, notes, covenants,
deeds, bills of exchange, or other writings, whereby money is pro-
mised or secured to be paid ; and the assignment of these instruments
vests in the assignee or endorsee, the same rights, powers and capa-
cities, as are possessed by the assignor or endorser.

The subjects arising for the consideration of the Court in the
cause before us, involve the discussion of the inquiry, whether the
statutes cited can be legally applied to the present case ; and *between
what parties* to suits in promissory notes, their aid is to be invoked in
the defence of those actions.

Statutes of the character of those under review, while in some
degree they bear the impress of a remedial character, are entitled to
a fair construction as to those in whose favor they are enacted, so
far as is requisite to carry out the intention of the Legislature, when
that intention, by legal rules of construction, can be ascertained.

Ordinarily, remedial statutes seem intended to supply any defects
or imperfections in common law, where the remedy is deemed im-
perfect, or too narrow, to subserve the ends of justice, when they
become what are termed enlarging statutes ; but those under consid-
eration cannot be embraced in that class, as they do not amplify or
add to the remedy, as known at the common law ; but being in de-
rogation of it, should be construed strictly, for it is laid down that a
statute, which takes away a common law remedy, ought never to
have an equitable construction.

The statutes before us certainly affect the remedy hitherto pos-
sessed by the plaintiff, in suits on promissory notes, by throwing the
*onus probandi* upon him, by the defendant's taking the oath, as pre-
scribed by the statutes. They are in direct derogation of the old
rules of the common law, as to the defence of actions, and the
principles of evidence, as to suits brought upon the above instruments.

Chancellor Kent says, that statutes are to be construed " in refe-
" rence to the principles of the common law, for it is not to be sup-
" posed, that the Legislature intended any innovation of the common
" law, further than the case absolutely required." 1 Kent Com.
464. And Lord Tenderden remarks that, " there is always danger
" in giving effect to what is called the equity of a statute ; it is much

White *vs.* Camp.

"better and safer to rely on, and abide by the plain words, al-
"though the Legislature might have provided for other cases, had
"their attention been directed towards them." 6 B. & C. 475.

From a review of the statutes cited, and being in *pari materia*, they
should be construed together : the effect is clearly this—that upon the
oath being taken, in compliance with the requisitions of the statute,
and by *proper parties*, the onus of proof is thrown upon the plaintiff,
and he is bound to prove the consideration of the instrument, upon
which suit is brought. The 24th section of the act cited is silent, as
to the parties between whom the consideration can be gone into ;
and in accordance with the views herein before expressed, we are
of opinion that it can only be applied between such parties as the
consideration could have been entered into at common law. It is
possible that this section may have been intended to have had a
more extended operation—if so, there is a *casus omissus*, and this
cannot be supplied by a Court of law, for that would be the assump-
tion of legislative powers by the Judiciary, and we are bound to take
the laws, as the Legislature have enacted them.

The 34th section of the act is sufficiently explicit, and clearly re-
lates to suit brought by the assignee or endorsee of the instruments
therein set forth, against the assignor or endorser, and seems to have
an eye to the privity existing between parties, at least, to notes and
bills of exchange.

To give any other construction to these statutes, would produce re-
sults, which the Legislature could never have intended or anticipat-
ed—if otherwise, there would be no safety in the receiving or pur-
chasing any of the instruments set out in the statute, particularly
bills of exchange and promissory notes. These being assignable by
endorsement or delivery, circulating from hand to hand, in accordance
with the liberal and comprehensive notions of commercial policy,
and entering into every day transactions of life, every consideration
demands, that no restraint should be placed upon their free circula-
tion, by the enforcement of a principle of defence, not set forth in the
plain words of the act, and in restraint of the remedy at common law.

The question now arises, can the consideration of the note in suit
be gone into between White, the endorsee, and Camp, the maker of
the note, by the common law.

The total, or partial want, or failure of consideration, or the ille-
gality of consideration, may be insisted upon as a defence or a bar
between any of the intermediate or original parties to the contract.

It may be insisted upon by the maker against the payee, and by the payee and his endorser, and cannot be inquired into between the endorsee and the maker.   208 Story on Prom. Notes.   Braman *vs.* Hess, 13 John. R. 52.

The holder of a negotiable instrument, taken before due, is *prima facia* rightful owner of it, and he need not prove consideration, except circumstances of suspicion appear ; and to render it void in the hands of an innocent endorsee, there must be a knowledge of the want, failure, or illegality of consideration.   4 Hill, 442.   6 Wendell, 615.

The defendant in the Court below, though he pleaded illegality, want and failure of consideration, et cetera, adduced no proof that the plaintiff took the instrument sued upon, under suspicious circumstances, or with knowledge of the defects alledged ; and the rule now is, that the endorsee, when plaintiff, need not prove a *bona fide* consideration paid by himself, until some suspicion is cast upon his title.   1 Moody & Robinson, 366.

So far as the evidence in the Court below is concerned, White is clearly a *bona fide* holder, for a valuable consideration, without notice—and in accordance with the law, as to notes payable *on demand*, a holder before the note was due.

The presumption of law is, that when a bill or note is endorsed in blank, that it was endorsed on the day of its date, or at least before it was due.   If the defendant alledges, that it was endorsed after it was due, the burthen of proof is on him to shew it.   137 Bailey on Bills.   Pinkerton *vs.* Bailey, 8 Wendell R. 600.   When a promissory note, payable on demand, is endorsed within a reasonable time after its date, the endorsee has all the rights of an endorsee receiving a negotiable instrument before it comes due.   If not endorsed in a reasonable time, it is considered as overdue, and dishonored, and the endorsee will be subject to any defence, which would have been available against his endorser.   135 Bailey on Bills.   4 Mass. 370. What is considered reasonable time, is not precisely settled, but depends upon the circumstances of each particular case ; but the presumption is, that it was transferred within a reasonable time, unless the contrary is proved.   137 Bailey on Bills.

The Court, upon a view of the case, is of opinion, that the affidavit of Camp should have been treated as a nullity ; that the Court erred in receiving it ; and that the cause should have been tried solely upon common law principles.   But even if the affidavit should have

been received, it is not such a one as the statute required. It should have been drawn in issuable terms, and confined to a single allegation—not in the alternative or double—but should have been so constructed, rendering it analagous to the old English rule of notice, as to have apprized the party plaintiff, what facts he would be required to prove upon the trial. It first denies the consideration of the note ; and if it was valid and legal, it has totally failed, while the facts as set forth in the notice, would seem to make out a case of original consideration of the note.

In conclusion, we think the errors well taken. The judgment in the Court below must be reversed—the cause remanded to the Court below—and *venire de novo* awarded.

DOUGLAS, Chief Justice :

At common law, promissory notes and bills of exchange were negotiable ; they imported a consideration ; if endorsed before they fell due, the consideration could not be gone into, except between the original parties, unless there were some suspicious circumstances attending the transaction ; and if there was nothing to shew the time when the endorsement was made, it was presumed to have been made before they fell due. If endorsed after they become due, the endorsee took them, subject to all the equities that existed between the original parties thereto.

The first clause of the 34th sec. of our judicial act, *Duval's Comp.* 96, makes, any bond, note, covenant, deed, bill of exchange, or other writing, whereby money is promised, or secured to be paid, transferable by assignment or endorsement.

It is proper to remark here, that this act was passed in the year 1828, and that the Legislature, at the same session, repealed the act which had before introduced into the Territory of Florida the common law of England. This judicial act, therefore, was the only law in force in Florida, touching these several classes of instruments, until the common law was again introduced in the year 1829. Hence, the reason why notes and bills of exchange are found in this category.

Many of these instruments, although made negotiable by assignment or endorsement, did not, at common law, import a consideration ; and without that law, a doubt might well have been entertained, even in regard to those which *did*. To remedy this inconvenience, and carry out the views of the Legislature as to all, which it is presumed, was to increase the quantity of negotiable paper, in a

White *vs.* Camp.

new country, where there were few mercantile transactions, and the circulating medium was scarce, the 24th sec. of the same act declared, that all promissory notes, and other instruments of writing, not under seal, should have the same force and effect, as bonds and instruments under seal.

The full effect of this provision upon these instruments, has never, (so far as I am aware,) been judicially determined. It certainly has not been supposed, by the legal profession, to give them such an effect, that an action of covenant could be maintained upon any one of them.

But they import a consideration, and without some further provision, the plaintiff could not, in any case, have been required to prove such consideration, unless it had been impeached by *proof* on the part of the defendant.

The last clause of the 34th sec. above cited, therefore declared, that the assignee or endorsee of any such instrument, might bring suit in his own name; and that it should not be necessary for the assignee or endorsee of any instrument, assignable by law, to set forth in the declaration, the consideration upon which such assignment or endorsement was made ; nor to prove such consideration, unless the same should be impeached by the defendant under oath. And the 2d clause of the 24th section also declared, that it should not be necessary for the plaintiff to prove the execution of any bond, note, or other instrument of writing, purporting to have been signed by the defendant, or the consideration for which the same was given, unless the same shall be denied by plea, put in on oath.

What is the converse of these propositions ? Why, that if such plea is put in on oath, in the one case, or the consideration in the other is impeached under oath, the plaintiff must prove the execution and consideration in the one case, and the assignment, or endorsement, and consideration thereof in the other—in all cases where the rule would apply to such instruments, so endorsed, at common law—for notwithstanding the Legislature had repealed that law, it cannot be supposed that they legislated, without any regard to its wise and equitable provisions.

The object of the Legislature was, as before remarked, to increase the quantity of negotiable paper ; but these provisions of the statute would, in a great measure, have defeated their own object, if such plea or impeachment required this proof from the plaintiff in any case, except between the immediate parties to the instrument, or

White *vs.* Camp.

where the plaintiff had taken it after it had become due, or under such other suspicious circumstances, as should have put him on inquiry.

We are warranted, therefore, I think, in the conclusion, that these provisions of this statute only apply, as between the immediate parties to the transaction, or such others as have taken these instruments after due, or have not acted in good faith, or with due circumspection in cases attended with suspicion ; and this, as I understand it, is all that the opinion, delivered yesterday by Judge Hawkins, in this case intended to assert on the subject.

BALTZELL, Justice, dissenting :

In the decision made in this case I fully concur, but do not agree to those parts of the opinions delivered which declare, " from a re-" view of the statutes cited and being in pari materia, they should be " construed together : the effect is clearly this—that upon the oath be-" ing taken in compliance with the requisites of the statute and *by* " *proper parties,* the onus of proof is thrown upon plaintiff, and he " is bound to prove the consideration of the instrument upon which " suit is brought." And in the opinion of the Chief Justice, " We " are warranted therefore I think in the conclusion, that these provi-" sions of this statute only apply as between the immediate parties " to the transaction, or such others as have taken these instruments " after due, or have not acted in good faith or with due circumspection " in cases attended with suspicion." Whilst the decision of the Court exempts bills of exchange and promissory notes in the hands of an innocent holder from the effect of the provision of the statute cited, this clause declares that all other instruments are subject to it, and that in case of suits brought upon them where an affidavit denying the consideration is filed, the burthen of proof is thrown upon plaintiff to establish it. I greatly regret that an expression of opinion upon this point was deemed necessary, as it did not occur in the case, had not been argued and was not presented by the record. It has been made however, and imposes upon me the duty of expressing my own views upon the subject, though reluctant to declare a dissent from the opinion of a majority of the Court. This is rendered the more necessary from the fact that the construction given, if persevered in, will lead in my opinion to very great embarrassment in practice, if not to serious injury and injustice to parties.

The position is that the plea of no consideration, verified by affidavit, throws the burthen of proof on plaintiff. That the plea of it-

White *vs.* Camp.

self has not this effect is evident, being "a mere statement of de-fendant's ground of defence." 3 Blacks. Com. 225.

Has the plea with the affidavit this effect? The question may in some degree be answered by inquiring into the purposes and objects for which affidavits are used when attached to pleas and other pro-ceedings.

"Affidavits are usually for certifying the service of process or other matter touching the proceedings in a cause." 1 Jacob's Law Dict. 64.

Also, by adverting to cases of pleas, to which affidavits are requir-ed by law.

Dilatory pleas are required to be under oath by statute, so also, pleas, puis darrien continuance. 1 Chitty, 452–3––638.

An oath is required "to prove the truth thereof, or show some pro-bable matter *to the Court,* to induce them to believe that the fact of such dilatory plea is true." Ibid, 452.

It is no where held or even intimated, that in any of these pleas so supported by affidavit, the burthen of proof of the matter pleaded is thrown on the plaintiff.

To give the plea and affidavit the effect asserted would be to make them more than proof; by throwing the proof on the other side they are in this respect *conclusive* until rebutted by stronger testimony. Now I cannot find that the voluntary affidavit of a defendant is any where, in any of the books regarded as evidence, much less as con-clusive.

"The plaintiff or defendant may take affidavit, yet it will not be "admitted in *evidence at the trial,* but only on motion." 1 Lilly, 44. 1 Jacob's Law Dict. 64.

"It is undoubtedly a *sound rule,* which ought *never to be violated,* "that no man can be a *witness in his own cause.* The affidavit of a "party is received on many incidental questions addressed *to the Court,* "and *do not effect the issue to be tried by the jury.* The testimony "which establishes the loss of a paper is addressed *to the Court,* and "does not relate to the contents of the paper. It is a fact which may "be important, as letting in the party to prove the justice of the "cause, but does not itself *prove any thing in the cause."* Ch. Just. Marshal, in Taylor *vs.* Riggs, 1 Peters, 597.

"The general rule is that a party to the record in a civil suit can-"not be a witness either for himself or for a co-suitor in the cause." Greenleaf, 378.

" But though in criminal cases the exceptions are few indeed, in
" which a party interested may not be a witness, in civil cases there
" is hardly at common law an instance where the case is so circum-
" stanced that he may, and this upon clear reasons operating such ex-
" clusion.   An universal exclusion, where no line short of this could
" have been drawn, preserves infirmity from a snare, and integrity
" from suspicion and keeps the current of evidence thus far at least,
" clear and uninfected."   1 Gilb. Ev. by Loft. 223—224.

If the defendant is permitted to make evidence in his own cause,
let the privilege be mutual, and extended to plaintiff, and let both be
examined as witnesses.

Whilst no authority can be found for making the affidavit of the
party, evidence for him on a trial before a jury, the law is well settled,
that the affidavit of defendant is evidence against him.   2 Starkie's
Ev. 21.

It may be regarded as established, I think, that an affidavit attached
to a plea is not evidence, and cannot be read to the jury.   Its only
effect then, according to the authorities, would seem to be that " of
certifying or proving the truth thereof *to the Court,* to induce them
to believe the fact of the plea to be true."

I have thus far considered the question on general principles and
the authorities bearing upon the point.   It is now proper to advert
to the statute itself, to ascertain the *design* of the Legislature in pas-
sing the law which is the subject of consideration.

" Three points are to be considered in the construction of all reme-
" dial statutes, the old law, the mischief and the remedy ; that is how
" the common law stood at the making of the act, what the mischief
" was for which the Common Law did not provide, and what remedy
" the Legislature provided to cure the mischief; and it is the busi-
" ness of the judges so to construe the act as to suppress the mischief
" and advance the remedy."   1 Blacks. Com. 87.   1 Kent, 464.

First let us see what the common law was previous to the passage of
this statute.   " Inadequacy of consideration in sealed instruments
" could not be impeached or inquired into at Law, for every bond
" from the solemnity of the instrument carries internal evidence of a
" good consideration."   2 Blacks. 445 and notes.

" Bills of exchange and promissory notes, partake also of this pri-
" ilege ; hence it was unnecessary to establish that a promissory note
" was given for a consideration, and the burthen of proof rested on
" the other party to establish the contrary, and to rebut the presump-

White *vs.* Camp.

".tion of validity and value raised by the law for the protection and " support of negotiable paper," 2 Blacks. 446. Story on prom. notes, 197, 207–8, Sec. 181.

Contracts in writing not under seal had not this privilege, and in reference to them, consideration was required to be proved by plaintiff. 2 Black, 446, n.    7 T. R. 350.

The mischief then was, first, the difference prevailing between writings with and without seals, which by the advance of civilization had become more in name than reality.    Secondly, the frequent contesting of the consideration of written instruments on insufficient grounds. Thirdly, that the consideration of sealed writings could not be inquired into.

The remedy was 1st, to put all written instruments on the same footing, by giving to all the force and effect of bonds and instruments under seal ; and secondly, to allow them to be contested, only by affidavit ; hence it was declared not necessary for the plaintiff to prove " the consideration for which any bond, note or other instrument of writing was given, unless the same shall be denied by plea, put in and filed under oath."   Now of this it may be premised that the statute does not say that plaintiff shall prove the consideration, if it is denied by defendant ; which would have left no room for construction, being a clear and decided expression of the legislative will ; but the expression is "it shall not be necesary unless denied," which is tantamount to an expression merely, that if the defendant do not deny the consideration on oath, it shall not be necessary for plaintiff to prove it, but shall be taken as proved ; and if denied by affidavit, it shall be considered as put in issue, to be tried according to the rules of law governing in such cases.

The issue is to be proved by the party raising it ; nor is it an answer to say that defendant is not required to prove a nagative, and that this plea is of this character.   It is not every negative a party is relieved from proving, and I apprehend this issue is of that charac. ter.    4 Mass. 349.   4 Pick. 174.

By this construction according to my view, the mischief, in the mind of the Legislature, is fully avoided and the remedy advanced. By it uniformity in these instruments is effected, the verity attached from time immemorial to sealed instruments as the deliberate and solemn act of the parties is preserved, and they at the same time are not relieved from a wholesome and proper enquiry on a proper showing by defendant of the want of consideration.   By it a wise and

beneficial operation is given to the Statute, and every reasonable design of the Legislature is accomplished. But suppose the other construction to prevail, and the consideration is taken as disproved, so as to throw the burthen upon plaintiff; is it not perceived that the whole force and character of the instrument is at the mercy of one of the parties, and that party by his own solemn act, and every rule of right and propriety, estopped from making such a defence. If this rule is to prevail, there can be no farther use for a bond, note or other obligation, hitherto adopted as the means of terminating a difficulty or dispute by some solemn act, having an admitted legal sanction. Is it not seen too that this rule will be highly injurious in case of notes, bills of exchange, bonds and other sealed instruments, which by the consent of almost the whole civilized world, from their very structure import a verity, and are regarded as made on consideration; and with what propriety can it be supposed that the Legislature in an act affirming the force and effect of these instruments, could have designed a provision by implication aimed at their vitality, and calculated more than all others to destroy their efficacy.

If it be true, as asserted by the Court in a rule of construction appealed to by them, "that it is not to be supposed that the Legislature "intended any innovation of the common law, further than the case absolutely required;" then I think we may safely conclude, that the construction asserted is not the correct one.

There would be "an innovation not absolutely required," in my opinion, by allowing the defendant to make evidence for himself, though an exparte affidavit, in violation of all principle, by throwing the proof from the shoulders of defendant on those of plaintiff, of an issue raised and presented by himself, and a further most injurious innovation by destroying the verity of sealed instruments and other writings. Such a rule, in my opinion, would create a greater mischief than that which the statute was designed to remedy. And its consequences are not to be confined to this Statute. Complainants file an affidavit to their bills in chancery, defendants to their plea to an application to foreclose mortgages at law; under the law for the trial of the right of property, plaintiff files his affidavit, and other instances not on our statute book. Are these also, to be embraced by the same construction?

It will not do to say that an answer in Chancery bears an analogy to the present case, since defendant is called on by plaintiff to give his testimony, and thus makes the answer evidence against him. Greenleaf's Ev. 397.

White *vs.* Camp.

I shall conclude my views of this subject by referring to other rules of construction pertinent to it, and which ought to have their bearing in its consideration.

"Thus the real intention when accurately ascertained, will al-"ways prevail over the literal sense of terms, and the reason and in-"tention of the law giver will control the strict letter of the law, "when the latter would lead to palpable injustice, contradiction and "absurdity." "When the words are not explicit, the intention is to "be collected from the context, from the occasion and necessity of "the law, from the mischief felt and the remedy in view; and the in-"tention is to be taken according to what is *consonant to* reason and "good discretion." Plowden, 205. 1 Kent's Com. 462.

"Where fundamental principles are overthrown, when the gener-"al system of the laws is departed from, the legislative intention must "be expressed with irresistible clearness, to induce a *Court of Jus*-tice to suppose a design to effect such objects." 2 Cranch, 358. 1 Cond. R. 421.

It will be no answer to say that a similar provision, and the same words are used as to the denial of the execution of a bond. To this it may be replied that a different rule prevailing as to it, a different construction of the statute is necessary. A plea of *non est factum* at common law, always put the proof of the signature on plaintiff, whereas the consideration of bonds and notes was never required to be proved by plaintiff, nor allowed to be questioned from the fact, that the party having made a solemn act of such character, was estopped to deny its validity.

"It is by no means a correct rule of interpretation, to construe the "same word in the same sense, wherever it occurs in the same in-"strument. It was very justly observed by Ch. Jus. Marshall in "the Cherokee Nation *vs.* State of Georgia, that it has been said, "that the same words have not necessarily the same meaning attach-"ed to them, when found in different parts of the same instrument. "Their meaning is controlled by the contract." 1 Story's Com. Const. 440. 5 Peters, 119.