REASON D. PRESCOTT, APPELLANT, vs. WILLIAM H. JOHNSON, APPELLEE.

1. The establishment of a lost note under the statute is no bar to any defence that might be set up to the original note.

2. Where a promissory note has been negotiated before due, under circumstances which, at common law, would authorize an inquiry into the consideration thereof, the same enquiry may be made under a plea of failure of consideration, filed on oath, under the statute.

3. Where the plea of failure of consideration of a promissory note is filed under oath, according to the statute, the statute throws the *onus* of proving the consideration thereof upon the plaintiff.

4. Where a new trial is moved for on the ground of a misdirection, calculated to raise an immaterial issue, if the Court see that justice has been done between the parties and there was no evidence by which they could have been misled, they will not disturb the verdict.

This case was decided at Jacksonville.

Appeal from Duval Circuit Court.

For the facts of the case reference is made to the opinion of the Court.

*Philip Fraser* for appellant.

*W. A. Forward* for appellee.

PEARSON, J., delivered the opinion of the Court.

Assumpsit on two promissory notes made by William H. Johnson, the defendant, payable to one James Anderson or bearer. The consideration appears upon the face

18

of the notes, to wit: "For value received for a certain boy Isaac." The notes are dated December, 1856, and payable as follows:

First note, $200, payable 1st of February, 1855.

Second note, $325, payable 1st January, 1856.

There are six pleas in the cause upon which issue was taken, the substance of which are,

First, That said promissory notes were not the property of said plaintiff.

Secondly, That the consideration for which said notes were given *had wholly failed*.

At the trial in the Circuit Court, holden in and for the county of Duval, the following appeared to be the facts of the case:

One James Anderson, a transient person, sold to W. H. Johnson a negro boy Isaac, for $1,000. Part was paid down and the notes, the foundation of this action, were given for the balance of the purchase money; that on or about the time the first note became due the said Prescott made repeated visits to the store of the said Johnson, and frequently conversed with the witness, a clerk of said Johnson, about said notes and the probability of their being paid at maturity, at the same time stating that he was not the owner of the notes, but could get them at a "great shave;" also, when asked where Anderson was, equivocating and refusing to give his "whereabouts." It also appeared, that said Prescott was told by said clerk of Johnson that said notes would not be paid if the consideration failed. It also appeared from the testimony that said Prescott, at these conversations, related to the witness what the notes were given for and acknowledged he knew all about the sale of said negro boy Isaac to said Johnson, as also the terms of the sale. All these facts, it appeared, were known to said Prescott at a time

when he said he did not own the notes, but that Anderson had them.

The original notes were not produced at the trial, but, in lieu thereof, copies established after the commencement of this suit, under the statute of Florida, were read in evidence.

The plaintiff offered no testimony excepting the established copy of the notes. It did not appear that the original notes were ever seen in the hands of said Prescott.

The counsel for the plaintiff asked the Court to charge the jury:

1. That the establishment of lost notes by law, as contained of record, is *prima facie* evidence of ownership in the person in whose behalf they are established as fully as the actual possession of the original notes would be.

2. That the maker being notified of the institution of proceedings to establish lost notes and failing to appear and make defence, is stopped by the judgment of the Court from disputing the title of the person establishing the same.

3. When a promissory note is transferred before it becomes due, in order to invalidate it in the hands of the transferree, the defendant must prove failure of consideration and notice of such failure to the transferree before the transfer brought clearly home to him.

4. That the jury are the sole judges of the facts and the credit of the testimony. If they do not believe a witness, they will reject his testimony.

The Court refused the second instruction and gave the others.

The counsel for defendant asked the Court to charge the jury, that,

1. If the plaintiff (Reason Prescott) has not the possession of the notes, nor either of them, by reason of any inter-

est he has in them, and his name has only been used as plaintiff, this does not make him a holder or assignee. It is not as *agent*, but as holder or assignee, that the plaintiff must show his right to maintain suit.

2. If you find from the evidence that said promissory notes, or either of them, were transferred after they became due, and that said boy Isaac was, at the time of the sale, the property of Aldrige Braddock and has since been recovered by the said Aldrige Braddock, that therefore the consideration has wholly failed and the plaintiff is not entitled to recover said notes, or such one as you may find was transferred after it became due.

3. Consideration of a note transferred before due can be enquired into where circumstances of suspicion appear. If you find that the said Reason Prescott, at the time of receiving said notes, or either of them, had knowledge said boy Isaac was claimed as the property of Aldrige Braddock by said Braddock, and that said claim was afterwards perfected and therefore there was a want of consideration, then the plaintiff is not entitled to recover.

Which instructions were given by the Court, and the jury found a verdict for defendant.

Motion was made for a new trial on the following grounds, to wit:

1. Because the verdict is against the evidence.

2. Because the verdict is against law.

3. Because the verdict is against the manifest weight of evidence.

Which motion for new trial was denied, and this cause comes up to be heard on writ of error to the judgment rendered in said Court.

The statute providing for the establishment of lost papers (see Thompson's Digest, 361,) declares that "*all copies of papers established as herein prescribed shall be*

*as valid and effectual for all legal purposes as the original could have been had the same not been lost.*" This provision of the statute seems clear, and under it, we think, the establishment of a copy in lieu of the original was no more than an admission that he (Johnson) gave such notes, and the establishment of a lost paper can have no more force than the recovery of the original; and reading the copy in evidence, although established under the statute, could not operate as an estoppel to any defences which might have been set up against the original had the original been read in evidence. Therefore we do not think the Court erred in refusing the charge as prayed.

The next question to be considered is the plea of failure of consideration, which appears by the record to have been *sworn to* and filed in the manner prescribed by the statute in such cases.

The 24th section of the act of November 23d, 1828, (see Digest, 331,) reads as follows : " *And it shall not be necessary for the plaintiff to prove the execution of any bond, note or other instrument of writing purporting to have been signed by the defendant, nor the consideration for which the same was given, unless the same shall be denied by plea put in and filed as aforesaid.*"

It will be observed the expression of the statute is, "*the consideration.*" It does not say want of consideration, or failure of consideration, but says "*the consideration.*"

In the case of White vs. Camp, 1 Florida, p. 95, this Court said : " Upon the oath being taken, in compliance with the requisitions of the statute, and by *proper parties*, the *onus* of proof is thrown upon the plaintiff, and he is bound to prove the consideration of the instrument upon which suit is brought."—1 Florida, 100.

From this it would seem that the *onus* of proving the consideration where plea of *failure of consideration* is

put in on oath is upon the plaintiff in *cases* where the consideration can be enquired into.

The case of Hagler vs. Mercer, reported in 6 Flo., 342, was a case entirely upon the admissibility of a plea. The question was whether the affidavit was necessary to permit the plea of failure of consideration to be filed, the Court determining only that the plea was admissible and good at common law, but did not change the *onus* of proof except in cases where it is sworn to.

Suffice it to say, that, in deciding this case, the Court entertains the same view of the statute it did in the case of White vs. Camp. As this is an action, not between the original parties to the notes, but between the holder as assignee and the drawer, we are called upon, in the next place, to ascertain whether as between such parties the consideration can be enquired into at common law. The Court charged the jury, that " consideration of a note can be enquired into where circumstances of suspicion appear."

It is laid down in Story on Promissory Notes, page 237, § 197: " *It will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction and to put the holder upon enquiry.*"

In Down vs. Halling et al., 4 Barnwell & Cresswell, 332, the Court held : " The jury were properly directed to find for the plaintiff if they thought the defendant had taken the check under circumstances which *ought to have excited the suspicion of a prudent man.*"

The case of Cone vs. Baldwin, 12 Pickering, 545, goes to say : " In an action by the holder against the maker of a negotiable note, founded on a consideration which failed, the defendant is not obliged to prove that the plaintiff purchased with full and certain knowledge of the want

or failure of consideration  *If the circumstances attend-ing the transfer* were such as to put him upon his guard and he made no enquiry into the consideration, he pur-chased at his peril."

From these cases we find, that, at common law, where circumstances of suspicion appear, the holder of a nego-tiable instrument, taken before due, may be required to prove consideration.

The defendant in the Court below pleaded failure of con-sideration under *oath*, and adduced proof that the plaintiff took the notes sued upon under suspicious circumstances. The jury so found under the evidence, and this Court is not prepared to say their verdict was contrary to evi-dence. It follows, then, that the *onus* of proof that the consideration had not failed was upon the plaintiff. On this point we do not find one particle of evidence.

We think the second instruction asked for by defendant's counsel and given by the Court was erroneous and might have been calculated to mislead, if there was any evidence upon which they could, under this charge, have been mis-led. The words of the charge were, "*If you find, from the evidence,*" the title and recovery of Braddock, &c. There being no legal evidence at all, the jury could not have been misled—therefore the charge was innocent. It is manifest to us from the evidence, that whether this charge had been given or not, the verdict would have been the same. The case seems to us so developed that there could have been no recovery without proof of title in the vendor. We think, therefore, a new trial would have been fruitless; and, where the Court are satisfied a new trial would not bring about a different result, it is not proper to grant one. But, without further discussing that point, we think the verdict was sustained by the evidence; and, while we consider that there was error in the last men-

tioned charge, we do not consider it sufficient to set aside the verdict and grant a new trial.

In Edmonson vs. Mitchell, 2 Dunford & East, page 4, it is laid down, that "where a new trial is moved for on the ground of a misdirection in point of law, if the Court see that justice had been done between the parties, they will not set aside the verdict nor enter into a discussion of the question at law." And this principle has been settled by this Court in the case of McKay vs. Lane, 5 Flo., page 276, and substantially reaffirmed in Doggett vs. Willey, 6 Florida, 482.

The defendant by his plea under oath having stated that the consideration of said notes had wholly failed, the burthen of proof to the contrary was upon the plaintiff. He having failed to make such proof, the judgment of the Court below is affirmed with costs.

DuPONT, J., dissenting.

Concurring as I do in so much of the opinion delivered in this case as states the effect to be given to the established copy of a lost paper, I am nevertheless constrained to *dissent* from the judgment of affirmation as well as from the grounds upon which that judgment is placed. In order that my views may be fully comprehended and properly understood, I commence with the third exception embraced in the assignment of errors, which complains that the Court erred in giving the instructions asked by defendant's counsel. These instructions are as follows:

"1st. If the plaintiff (Reason Prescott) has not the possession of the notes, nor either of them, by reason of any interest he has in them or either of them, and his name has only been used as plaintiff, this does not make him a holder or assignee. It is not as agent, but as holder or assignee, that the plaintiff must show his right to maintain suit.

" 2d. If you find from the evidence that said promissory notes, or either of them, were transferred after they became due, and that the said boy Isaac was, at the time of the sale, the property of Aldridge Braddock and has since been recovered by the said Aldridge Braddock, that therefore the consideration has wholly failed and the plaintiff is not entitled to recover said notes or such one as you may find was transferred after it became due.

" 3d. The consideration of a note transferred *before* due can be enquired into when circumstances of suspicion appear. If you find that the said Reason Prescott, at the time of receiving said notes, or either of them, had knowledge that the said boy Isaac was claimed as the property of the said Aldridge Braddock by said Braddock, and that said claim was afterwards perfected, and that therefore there was a want of consideration, then the plaintiff is not entitled to recover."

In considering the propriety of these instructions, which have been made the subject of exception, I remark, that whatever diversity of opinion may exist as to the right of the maker of a note made payable to " bearer" to call in question the title or ownership of one who sues as bearer in ordinary cases, in this case the right cannot be questioned. Here the only material difference set up against the recovery upon these notes was, that the consideration for which they were given had totally failed. This defence would not avail, nor was it admissible against the present plaintiff if he had received a *bona fide* transfer of the notes *before* they became due. If, however, it should be shown that the property in the notes was still in the payee and original holder, and that the name of the plaintiff suing was used only as a sham and a blind, it is clear that the fact so shown to exist might be made available to the de-

fendant against the nominal plaintiff without further en-quiry with respect to the time (whether before or after due) when the alleged transfer may have been stated to have been made. In this view of the case, I have no hesitancy in sustaining the first instruction asked for on the part of the defendant; and had the instructions stopped at that point, I should as unhesitatingly have sustained the judgment rendered upon the verdict of the jury in the Court below. But such was not the case. The Court proceeded to give the 2d and 3d instructions asked for by the defendant, the giving of which, in my opinion, was a most fatal error.

I am well aware that it is not every erroneous instruction that will vitiate a verdict, but where the instruction is of such a character as to be manifestly calculated to mislead the jury, either from being irrelevant to the issue or unsupported by any evidence in the cause, such instruction has been universally held to constitute error sufficient to call for a reversal. Now, as to these instructions, it will scarcely be pretended that the record affords one tittle of evidence with regard to a failure of the consideration, and it is only necessary to refer to the position of the case before the jury to be convinced that the instructions were well calculated to mislead them as to the true issue to be tried by them.

The material defence relied upon by the defendant was, the *failure of consideration*, and it was set forth in the pleas by the allegation that he had been ousted of the property for which the notes were given by one asserting a paramount title to the same. The only witness to this point was William C. Trowbridge, whose testimony was adduced in the form of a deposition. In his responses to the 9th and 10th interrogatories is contained *all* that bore upon that point. The answers, it is true, were quite full,

but, unfortunately for the case of the defendant, all that he said upon that subject was merely "hearsay," and was very properly *ruled out by the Court.* With the exclusion of this testimony, the pleas which set up the defence stood wholly unsupported by one particle of evidence. If with these pleas before them, which *circumstantially* set forth the mode and manner of the alleged failure, the hearsay testimony of Trowbridge discussed in their presence and hearing, and then the rulings of the Court to the very point, the jury were not likely to be misled as to the particular matter that they should legally decide upon, I am at a loss to conceive of a case in which an erroneous ruling of the Judge would be likely to mislead them.

It is assumed, however, by the majority, that the pleas setting up a "failure of consideration" having been verified by the oath of the defendant, it was incumbent upon the plaintiff, under the provisions of the statute, to *negative* the alleged failure by proof on his part. In other words, that the oath of the defendant changed the *onus,* and that it was for the plaintiff to prove that the consideration had not failed. It is proper to remark here, that the notes disclosed on their face the consideration for which they had been given, being for the "boy Isaac."

I had thought that the ruling in Hagler vs. Mercer (Flo. Reports) had put that question at rest. It was distinctly ruled in that case that the statute went no further in its effect than to require of the plaintiff, when the plea should be verified by the oath of the defendant, to *disclose* and set out the consideration, and that the *failure,* if any, must be established by affirmative proof brought forward by the defendant. It is now said that the ruling is of no authority, as the point ruled did not arise in the case. With the utmost respect for the opinions of my Associates as to the ruling in that case, I am constrained to differ with them,

and to hold that the particular point which arose in that case legitimately involved the construction and interpretation of the statute, and that it could not have been properly considered without such construction and interpretation. But I hold, moreover, that that ruling upon the effect and operation of the statute was eminently proper, and that the distinction therein taken between the *want* and *failure* of consideration was correct.

Apply the present views of the Court to the pleadings in this case and the correctness of the ruling in Hagler vs. Mercer will be clear and obvious. The copy of the notes attached to the declaration fully *disclose* on their faces the consideration. They were given for the purchase of the "boy Isaac." The plea alleges a *failure* in consequence of the "boy Isaac" having been recovered from the defendant in an action at law prosecuted in Macon, Georgia, by Aldridge Braddock. Now, suppose that, in conformity with the present views of the Court, the plaintiff had proceeded to show that at and for a long time previous to the sale to the defendant he had been in peaceable possession of the boy—suppose that he had proceeded further to show that he had bought him in good faith from a third party, and had exhibited his paper title from said party, and so *ad infinitum*, would all this have been sufficient to *negative* the particular allegation in the plea, viz: that "the boy Isaac had been recovered in Macon, Georgia, by Aldridge Braddock?" No, he must go on further and prove that the allegation was false, by showing either that there never was such an individual as the one named, or that there was no such locality as Macon, Georgia, or that there was no Court holden in that locality, or that there never was any such suit instituted upon which a recovery could have been had. Suppose, again, that instead of the allegation of a failure of title, it had been that the boy was

affected at the time of the sale with a particular disease, of which he had afterwards died, how would the plaintiff go about *negativing* the fact of the disease and the other fact of the death by that particular disease, the property in the meantime having passed through a dozen hands, probably, and removed hundreds of miles from him? If the statute is to have the operation now contended for, the sooner it is known the better, in order that the mind of the Legislature may be called to the subject.

The case of White vs. Camp (4 Flo. Reps.) is referred to in the opinion as supporting the present views of the Court. The single question in that case was as between what parties the consideration could be impeached, and it was ruled that the statute was intended to apply only to the original parties or those standing in that light, according to the principles of the common law. At the time that this decision was made the bench was occupied by Judges Hawkins, Douglass and Baltzell, (the present Chief Justice,) and it is worthy to be noted that Judge Douglass was particular in stating that he considered the opinion of Judge Hawkins, who delivered the opinion of the Court, not to extend beyond that particular point. It is also worthy of note, that Judge Baltzell, who *dissented* from the judgment pronounced in that case, utterly repudiated the idea that the statute had the effect to change the burthen of proof (as it stood at common law) *in any case whatsoever.* How, then, can it be said that the ruling in White vs. Camp supports the views of the Court, as it is contended in the opinion delivered in this case?

It was insisted, in this connection, by the counsel for the defendant, that there being three issues before the jury, and their finding being general, if the law and evidence on either issue is sufficient to sustain it, the general finding will be held to be good. I am not disposed to contest

(as a general proposition) the doctrine contended for, but, in this case, it will be noted that the failure of the consideration was the gravamen or gist of the defence, and constituted the material issue to be tried. It was not enough to found a verdict upon, that the jury should arrive at the conclusion that the notes had been transferred *after* they were due, or that the alleged assignment was attended with suspicious circumstances. That constituted no bar to the recovery—it only opened the way for letting in the defence of the failure of the consideration, which, as before stated, was unsupported by a particle of evidence.

In this connection, the counsel for the defendant further insisted, that as there was a plea which put in issue the plaintiff's ownership of the notes, and as there was *some evidence* applicable to that issue, the verdict, though general, might be taken to apply to that issue. This view of the subject struck me at first with some force, and were I now confident that it was the right of the maker of the note, payable to bearer, to contest the holder's title to the same, it might relieve me of some of the difficulty that I feel in sustaining the judgment in this case. But I am not satisfied upon that point, nor would I be understood as indicating an opinion one way or the other. It is at least a mooted question and one that has engaged the attention of the Courts.

From what has been said, *it may* be seen that I base my *dissent* exclusively upon the ground that the two instructions before referred to, being responsive to the material issue in the case and entirely unsupported by any evidence, they were eminently calculated to distract the mind of the jury and to lead them to the consideration of a matter which they had no legal right to consider. It *is* of the last importance to parties litigant that everything calculated to confuse or mystify should be carefully ex-

cluded from the case submitted for their determination, and the naked point in issue be clearly presented to their minds; and when the appellate tribunal discovers that a different course has been pursued, it is its high prerogative and bounden duty to apply the proper corrective.