# BLISS *vs.* ANDERSON.

[BILL IN EQUITY BY STOCKHOLDER AGAINST OFFICERS OF INCORPORATED INSURANCE COMPANY.]

1. *When stockholder in private corporation may come into equity.*—A stockholder in an incorporated insurance company may file a bill in chancery, to restrain the officers of the company from the commission of an unauthorized act, which will not only amount to a forfeiture of its charter, but also subject the company to heavy fines and penalties.

2. *Construction of charter of Gainesville Insurance Company.*—The charter of the Gainesville Insurance Company, authorizing the company to receive money on deposit, "and to give acknowledgments for deposits in such manner and form as they may deem convenient and necessary to transact such business," (Session Acts 1855–6, p.    ,) does not authorize the company to issue certificates of deposit to circulate as money, and with the intent that they shall so circulate.

Bliss v. Anderson.

3. *Snfficiency of allegations of bill.*—An averment, that the board of directors adopted certain engraved forms of certificates of deposit, "which show on their face that they are intended to pass from hand to hand as money," is not, on demurrer, a sufficient allegation of the intent that such certificates shall so circulate, although they show on their face that they were intended to subserve the purposes of money.

APPEAL from the Chancery Court of Sumter.
Heard before the Hon. WADE KEYES.

THIS bill was filed by the appellee, as one of the stock-holders of the Gainesville Insurance Company, against the president and directors thereof, alleging that said company was incorporated by an act of the general assembly of this State, approved on the 22d January, 1856, and was organized under the provisions of its charter, by the subscription of the requisite amount of stock, and the election of president and directors; "that on the 31st October, 1856, said directors passed a resolution, to the effect that certain engraved forms of certificates of deposit, in denominations of one, two and three dollars, should be used as acknowledgments of deposits with said company;" "that the engraved forms referred to in said resolution are identical with those attached" to the bill as exhibits, "and show upon their face that they are intended to pass from hand to hand as money, or in lieu of money;" "that said resolution, in effect, authorizes the president and secretary of said company to issue said certificates, upon actual, *bona-fide* deposits with said company, by inserting the name of the depositors in the blank left for that purpose, and by the said president and secretary signing the same;" "that the said directors design that they shall be so issued, unless restrained from doing so by an injunction;" "that inasmuch as said certificates show on their face that they are intended to pass from hand to hand as money, or in lieu of money, said directors have no authority to use them, and put them out as acknowledgments to any person of an actual, *bona-fide* deposit by him with said company;" "that the charter of the company confers no power to do so, and if it does, it is, to that extent, violative of the constitution of the State;" and "that if said directors, or the officers of said

company by their authority, do so use them and put them out, it will occasion a forfeiture of the charter of said company under sections 935, 936, and 2651 of the Code of Alabama, or subject said company to losses and penalties, to the injury of complainant as one of its stockholders." The bill prayed an injunction to prevent the issue of the certificates, and added the general prayer for other and further relief.

The original exhibits to the bill are attached as exhibits to the transcript. It is impossible to give a *fac-simile* of the engraved forms of certificates of deposit referred to. An accurate description of them, which is sufficient to an understanding of the case, is given in the opinion of the court. The chancellor overruled a demurrer to the bill for want of equity, and, the defendants declining to plead or answer, ordered the bill to be taken as confessed; and his decree is now assigned as error.

JNO. A. ELMORE, and S. F. HALE, for appellants.—1. The certificates do not show on their face that they were intended to circulate as money, or to answer that purpose; and there is no such averment in the bill.

2. Unless such intent appeared on the face of the certificates, the court could not, without other proof, pronounce that such was the intent with which they were given. Crocheron v. Br. Bk. at Montgomery, 5 Ala. 251; Whetstone v. Br. Bk. at Montgomery, 9 Ala. 875.

3. The certificates show on their face that they are negotiable instruments, the issue of which was authorized by the charter of the company.

4. The company had express power to give certificates of deposit; the manner and form of which were not prescribed, but were left discretionary with the company.

5. If the effect of a particular manner and form were the necessary result and consequence of such manner and form, then this effect was as much a part of the grant as were the manner and form.

6. The manner and form of certificates of deposit are not usually noticed in a charter. When they are mentioned, it must be for some purpose, which, when ascer-

tained, is the legislative grant—the substance of the power intended to be given.

7. If certificates had been issued, payable alone to the depositor's order endorsed on them, no one would for a moment doubt the authority of the company to do so under the express power to give certificates; and such instrument, if endorsed by the depositor, would have all the elements of negotiability, and pass as readily from hand to hand as a bill of exchange or bank-check. If such instrument were presented to the company, and paid, the risk of the genuineness of the endorsement would be on the company. The manner and form of the certificates became, therefore, a matter of importance to the company in the transaction of "such business;" and they had the right to issue them in such form as would exonerate themselves from this risk, by discharging them on payment to the bearer.

8. The intention of an action must be judged by its necessary consequences. The legislature cannot be presumed ignorant of the character of a certificate of deposit, or of the fact that, like bank-checks, bills of exchange, and negotiable notes, it forms part of the general circulating medium of the country, and indeed, in large transactions, much the greater part. When, therefore, they granted to this corporation the privilege of receiving money on deposit, and giving certificates payable to bearer, they must have intended to grant all the necessary consequences attending such an act—the power to give such certificates, with all the incidents thereto; that is, the power of circulation so far as certificates of deposit usually circulate. The transaction of the business of deposits embraces its entire range, from the reception to the paying out of the deposit. The manner and form are to be such as, in the company's discretion, might seem convenient and necessary in paying out, as well as in receiving the deposits; and the paying out and receiving are inseparably connected, so far as the discretion of the company extends. It cannot be denied, that the company may well deem it convenient and necessary, in the multitude of its transactions, not to be compelled in paying out to

inquire into the identity of the holder, or the genuineness of the endorsement; and thus the form of the certificate may, under the charter, be such as to enable the paper to circulate from hand to hand. The form of the certificate thus becomes a vital right, a substantial power, which, to be effective, must have the force it purports to have. The company had the power, therefore, to put such certificates in circulation, to answer such purposes as might result therefrom.

9. The power of giving certificates, having the attribute of circulation, having been granted, it makes no difference that they are given for small sums. This does not affect the power, but only involves the degree and extent of circulation; and there is no restriction, in this respect, either in the charter, or in the general law.

10. Neither does the manner of engraving make any difference, or whether the certificate is printed or written; provided it shows on its face the true character of a certificate of deposit.

11. If the positions above stated are well taken, the charter of this corporation repeals the sections of the Code with which it conflicts.

12. There is a clear distinction between sections 935, 1484 and 3269, and sections 3268 and 3270 of the Code. The former prohibit the issue of paper to pass as money; the latter, paper to answer the purposes of money. The distinction is a plain one: bills of exchange answer the purposes of money, and so do bank-checks; while bank-notes are used as money itself. The power to give these certificates, then, does not conflict with sections 935, 1484, and 3269 of the Code, but is repugnant to sections 3268 and 3270; and the latter must be held repealed. These sections, moreover, are in derogation of a common-law right, and must be strictly construed.

13. As to the constitutionality of the charter: A bank, under the State constitution, is one which has all the powers of banking—discount, deposit, and circulation. The power of circulation is that of issuing its own bills, and is distinct from that of receiving on deposit, and giving certificates therefor; and yet these certificates have, to some

extent, equally with bank-notes, the attribute of circula-
tion.—Bank of Augusta v. Earle, 13 Peters, 593; Nance
v. Hemphill, 1 Ala. 551; Harrison v. Mahorner, 14 Ala.
829; Kane v. Paul, 14 Peters, 33. As to the free banks
of New York, which are declared not to be within the
provisions of the State constitution, see 22 Wendell, 74;
23 Wendell, 103; 3 Selden, 328; 3 Comstock, 479;
1 Hill, 616; 4 Hill, 20; 7 Hill, 504; 1 Sandf. Ch. 209.

In Safford v. Wyckoff, 1 Hill, 11, the paper showed on
its face that it was. negotiable; and the prohibition was
against all such paper, not issued as required by the stat-
utes of the State. In such case, the court could pronounce
on it as matter of law.

TURNER REAVIS, *contra.*—1. The certificates show upon
their face that they are intended to pass from hand to
hand as money, or in lieu of money. They are in denom-
inations of *one*, *two*, and *three* dollars; showing that they
are intended to be used as change. They are payable to
bearer. They are lettered and numbered like bank-notes.
They are to be signed by the president and secretary, in
the same way a bank-note is signed by the president and
cashier of a bank. They are engraved like bank-notes,
and on bank-note paper. They have the name of the
company engraved upon them, and the names of the
engravers; showing that they were expressly prepared for
the company. The *tout ensemble* induces the eye to regard
them as bank-notes; and they are in all respects in the
similitude of bank-notes. These *indicia* of an intent that
they are to be used as money, render the conclusion that
such is the intent irresistible.—Whetstone v. Br. Bank,
9 Ala. 883; Hazleton Coal Co. v. Megargel, 4 Barr, 328.

It is contended for the appellants, however, that the
court cannot determine as a *fact*, that the certificates
show upon their face that they are intended to pass from
hand to hand as money. This position cannot be main-
tained. In a chancery case, the court occupies the posi-
tions of both judge and jury in a court of law; and
may, therefore, determine questions of both law and fact,
when they necessarily arise. This case is similar to the

40

case of a bill which alleges that a deed, made an exhibit to the bill, was made with intent to hinder, delay, and defraud creditors. Now the question in that case, to-wit, the *intent*, is just as much a *fact*, as the question of *intent* in this case; and it is well settled that, in that case, the court may decide, upon an inspection of the deed, whether it is fraudulent or not. As to the practice of the court in deciding questions of fact upon demurrer, see 2 Sim. & Stu. 93, margin. But there is a more fatal objection to the position: *The demurrer admits the allegation, that the engraved forms referred to in the resolution are identical with those made exhibits to the bill, and show upon their face that they are intended to pass from hand to hand as money.* Story's Eq. Plead. 630. The question of *intent* is, therefore, settled by the pleadings. Moreover, the bill alleges that the company have no power to issue certificates in the form of the exhibits. This is a question of *law*, which the court *can* determine, upon inspection of the certificates and the charter.

2. It is conceded, that the company have power to issue certificates, as acknowledgments of *bona-fide* deposits, in such sums as are actually deposited, and in such manner and form as they shall deem convenient and necessary for the transaction of the business of receiving deposits. But, while they have the power to do *that*, they have not the power to do it with the *intent* that they shall pass from hand to hand as money, or in lieu of money. The *intent* makes their issue unlawful.—Branch Bank v. Crocheron, 5 Ala. Rep. 250; Curtis v. Leavitt, 17 Barb. 322, 323; Commonwealth v. Horner, 10 Leigh, 700; Hazleton Coal Co. v. Megargel, 4 Barr, 328. To render the issue of such certificates, with such intent, lawful, the company must have *express* power, not only to issue them, but to issue them to answer the purposes of money, or with the intent that they shall answer that purpose. The power to issue them for such purposes, or with such intent, cannot be *implied* from the mere power to issue them in any form, as acknowledgments of *bona-fide* deposits. Such an *implied* power is expressly forbidden by sections 1483 and 1484 of the Code. These provisions of the Code prevent

Bliss v. Anderson.

the charter of the company from operating as an implied repeal of the general statutes restraining the exercise of banking privileges. There is no conflict, however, between the power manifestly intended to be given the company, and the general st'⁻utes restraining banking. They can all stand together without any conflict; and one statute is never held to repeal another when both can stand. Kinney v. Mallory, 3 Ala. Rep. 626; Wyman v. Campbell, 6 Porter, 219; State v. Stebbins, 1 Stew. Rep. 299. This company was incorporated after the Code went into operation; and as there is no *express* power given to them to issue certificates, or acknowledgments of deposits, *to answer the purposes of money,* the charter is to be construed in reference to the provisions of the Code restraining the issuance of *any* paper, to answer the purposes of money. These provisions will be found in sections 1483, 1484, 935, 936, 2651, 3268, and 3269. Being thus construed, the effect of the charter is just the same as if a proviso were inserted in it to the effect, that the certificates, or acknowledgments of deposits, should not be issued with the intent that they should pass from hand to hand as money.—The People v. The Utica Ins. Co., 15 Johns. 358.

3. If the charter gives the company power to issue certificates, or acknowledgments of deposits, to answer the purposes of money, then the charter, so far as it confers banking powers, is unconstitutional. For this power, in connection with the powers conferred by the 6th section of the charter, constitutes the corporation a bank, within the spirit, if not within the letter, of the constitution; and the charter does not provide for any reservation of stock to the State, nor for the liability of the stockholders for the debts of the company. The 6th section of the charter authorizes the company *to lend their money at interest, to invest it in real or personal securities, by* DISCOUNTING, *and to deal with the same in the purchase and sale of domestic and foreign exchange.* The 8th section authorizes them "to receive in trust, or on deposit, all funds or moneys that may be offered to them, whether on interest or otherwise; and to give acknowledgments therefor, in such manner and form as they may deem convenient and

necessary to transact such business." And if, under the 8th section, these "acknowledgments" may be issued to answer the purposes of money, what more is necessary to constitute the company a bank?—Hazleton Coal Co. v. Megargel, 4 Barr, 328; Branch Bank v. Crocheron, 5 Ala. Rep. 250; Curtis v. Leavitt, 17 Barb. 322, 323; Commonwealth v. Horner, 10 Leigh, 700; Whetstone v. Branch Bank, 9 Ala. Rep. 883; The State v. Stebbins, 1 Stew. R. 299; The People v. Utica Ins. Co., 15 Johnson, 358. Banking being a common-law right of every *citizen*, the legislature may permit every *citizen* to exercise it. But a *corporation*, created by statute, has no common-law rights. It has only such rights as are given to it. It cannot exercise *banking* powers, unless they are *expressly* given. And since the adoption of the constitution of Alabama, the legislature cannot confer such banking powers, as are claimed by the appellants for the Gainesville Insurance Company, without the reservations and provisions prescribed by the constitution.—The State v. Stebbins, 1 Stew. Rep. 299; The People v. Utica Ins. Co., 15 Johns. 358. Besides, the Commercial Bank was chartered at the same session of the legislature with this company; and but one bank can, constitutionally, be chartered at one session of the legislature.

WALKER, J.—Sections 3268, 3269, and 935 of the Code are in the following words: "Any person, private corporation, or association, who, without authority of law, makes or emits any paper to answer the purposes of money, or for general circulation; such person, and each individual of such corporation or association, on conviction, must be fined not less than twenty or more than one hundred dollars, and may be imprisoned not more than twelve months." "Any person in this State, who signs any paper to be put in circulation as money, except under the authority of this State, or countersigns the same, must, on conviction, be fined in a sum not less than one hundred, or more than five hundred dollars; and the signature of such person to any such paper must be taken as genuine, unless the fact of signing be denied on oath by

the defendant." "Every bill of exchange, note, bond, or instrument of any description, whatever may be its form or device, issued with the intent to circulate the same as money, without authority of law, is an absolute, unconditional promise of the association or person putting such bill, note, or other instrument in circulation, and may be sued on by the holder thereof, without transfer or assignment, and without demand, protest, or notice, and the amount thereof recovered, with interest thereon, at the rate of fifty per cent. per annum from the date thereof, or from the time the same was put in circulation."

From these statutes it is manifest, that the issue of paper by the Gainesville Insurance Company, with the intent that it should circulate as money, without the authority to do so, would subject it and its active officers to losses and severe penalties, as well as involve a violation of its charter. If the corporation was about to do that thing which would be attended by such consequences, the court of chancery had jurisdiction to interpose its preventive power at the instance of a stockholder.—Dodge v. Woolsey, 18 Howard, 331–341; Christopher & Tilton v. Mayor of N. Y., 13 Barb. 567.

This case, then, turns upon the question, whether the bill shows that the corporation is about to issue, without authority, certificates of deposit, with the intent that they should circulate as money. In the solution of this question two points of controversy are presented: first, as to the power of the corporation to make such issues with such intent; and, secondly, as to the sufficiency of the bill to show the intent.

1. In determining the extent of the corporate authority, it is proper to look to a law, found in the Code, which was in force before the adoption of the act of incorporation. The law alluded to is as follows: "No private corporation, to which such powers are not expressly given, shall, by any implication or construction, be deemed to possess the power of discounting bills, notes, or other evidences of debt, of receiving deposits, of buying and selling gold, silver, bullion, or foreign coin, or *of issuing bills, notes, or other evidences of debt, upon loan, or for circula-*

*tion as money.*"—Code, § 1484. This statute must operate in the construction of the charters of all private corporations, adopted after its enactment.—Br. Bk. at Decatur v. Jones, 5 Ala. 487 ; Ang. & Am. on Cor. (3 ed.) 239, 240 ; People v. Utica Ins. Co., 15 Johns. 358.

But it is said that the legislature could repeal that statute, and have done so, in effect, so far as this corporation is concerned, in the charter. No provision of the charter expressly repeals that statute. If the charter, when considered alone, and without reference to any other law, would merely authorize the "*implication or construction*" that the corporation had the power to issue paper for circulation as money, it would not effect an exemption from the prohibitory section of the Code above copied, or operate a repeal of it as to the particular corporation. Corporations which would otherwise have the power, by implication or construction, are those which the prohibitory section of the Code is designed to restrict. If it does not restrict such corporations, it has no effect, and is virtually repealed by the contingency in which it was designed to exert its force. It is, then, only necessary to inquire, whether the charter expressly grants the power in question ; for, if it does not, there is no repeal or modification of the prohibitory section of the Code, so as to secure an exemption from the restriction of that section.

The only section of the charter, supposed to bear on this question, is in the following words : "The said company shall be authorized to receive, in trust, or on deposit, all funds or moneys that may be offered to them, whether on interest or otherwise; and that *they have power to give acknowledgments for deposits, in such manner and form as they may deem convenient and necessary to transact such business ;* all such moneys, so deposited, being free from loss or indebtedness, growing out of the insurance business of said company." The power to issue paper for circulation as money is not, in this extract from the charter, given by name ; and we think it demonstrable, that it is not included in any of express powers named.

The authority to give acknowledgments of deposits, in such "manner and form" as the corporation might *deem*

convenient, undoubtedly clothes it with a discretion as to the manner and form of the acknowledgments. But that discretion is not unlimited. It is limited by the scope of the power conferred.—City Council of Montgomery v. Montgomery and Wetumpka Plank-Road Company, at last term; Beaty v. Knowler, 4 Peters, 152–171; People v. Utica Ins. Co., 15 Johns. 358. The power is, to receive deposits, and give acknowledgments, in manner and form convenient and necessary to transact the business of receiving deposits. The discretion of the corporation is in the selection of the manner of the instruments by which it will execute the power of receiving deposits; and it must be exercised within the area of that power. It cannot be exercised for the purpose of giving their certificates of deposit a circulation as money; because their power is to act as a depositary, and to give acknowledgments as evidences of deposit, and they have no power to emit paper to answer the purposes of money. The charter itself limits the discretion to a manner and form convenient and necessary in the transaction of the business of a depositary. The power of issuing certificates of deposit is distinct and distinguishable from that of issuing paper for circulation as money. Certificates of deposit may be somewhat assimilated to paper money, in their susceptibility of transfer; but they are different, and the discrimination between them is as easy as between ordinary promissory notes and bank-bills. The power to issue paper, which may be transferred, is not a power to issue paper to circulate as money. If the corporation should issue its certificates of deposit in a manner and form to procure for them a circulation as money, it would issue them in a manner and form not merely convenient and necessary to transact the business of a depositary, but to transact that business, and also the additional and distinct business of emitting paper to answer the purposes of money. The corporation may issue its certificates of deposit in any manner and form which will accomplish its business of a depositary; but not in such manner and form as will accomplish that and another business. If it can so fashion its certificates of deposit as to procure for them

a circulation as money, it can add to its granted powers by an ingenious device, and obtain by subterfuge an authority which legislative caution withheld from it. The corporation has not the authority to issue paper to answer the purposes of money, or to give its certificates a form and semblance which will accomplish that object.

2. The question still to be considered is, whether the bill of complainant shows that the corporation was about to issue paper to answer the purposes of money. The allegation is, that certain engraved forms of certificates of deposits, specimens of which are attached as exhibits to the bill, and made parts of it, were adopted by the board of directors, and show upon their face that they were intended to pass from hand to hand as money, or in lieu of money. The pleader does not say, that the certificates were intended, when issued, to circulate as money; but that the engraved forms manifest upon their face the intent. Is that so? Is the intent a legal conclusion from those engraved forms, and from the fact that they are about to be filled up and emitted?

The engraved forms are in the similitude of bank-notes, and have the vignette and other embellishments characteristic of bank-notes. Their amounts are designated, as the denominations of bank-notes, by marginal letters and figures. They are numbered and lettered as bank-notes; are to be signed by the president, and countersigned by the secretary; are for amounts of one, two and three dollars, payable to bearer on the return of the certificate, which is in effect the same as if they were payable, like bank-notes, on demand; and, in addition to all this, they are printed on bank-note paper. They differ from bank-bills only in the fact, that they purport to be certificates of deposit, and are redeemable in bills of specie-paying banks. From these evidences, patent upon the faces of the engraved forms, a chancellor, in passing like a juror upon the facts, would infer the fact that they were intended to answer the purposes of money. Every characteristic, which could contribute to procure for them a circulation as money, without the abandonment of the name of certificates of deposit, has been given to them;

and then their small amounts clearly indicate the intention that they should issue for sums not adapted to represent singly an entire amount deposited, but suitable for circulation as money. The authorities fully maintain the proposition, that the intent as a fact might be inferred from such testimony.—Safford v. Wyckoff, 1 Hill, (N. Y.) 15; S. C., 4 Hill, 442; Smith v. Strong, 2 Hill, 241; Hazleton Coal Co. v. Megargel, 3 Barr, 324; Att. Gen. v. L. & F. Ins. Co., 9 Paige, 470.

But the inference of the intent would be but the inference of one fact from another. It is not sufficient, in chancery pleading, simply to aver the evidence from which a required fact might be inferred, although the evidence itself, if uncontradicted, and not overcome by opposing proof, might be sufficient to induce a chancellor or a jury to find the fact from it.—Knight v. Vardeman, 25 Ala. 262; Costillo & Keho v. Thompson, 9 Ala. 937; Ogletree v. The State, 28 Ala. 701; Oliver v. State, 17 Ala. 597. The averment of the evidence afforded by the engraved forms, although, unopposed, it might justify the conclusion of the necessary fact that the intent existed, cannot be substituted for the averment of that fact. That evidence is not the requisite fact. It but produces that combination of probabilities from which disputed facts are inferred, and may be overcome by countervailing evidence.—Carter v. Anderson, 4 Geo. 517.

The averment, that the engraved forms show the intent, is a statement that such is the conclusion of law. The correctness of such a statement the demurrer does not have the effect of admitting.—Story's Eq. Pl. § 452; Carter v. Anderson, 4 Geo. 517. It is not a conclusion of law, from the face of the certificates, that the purpose of their issue would be that they might circulate as money. The averment of the bill is, therefore, insufficient to show the intent; consequently, the bill does not contain equity, and the demurrer should have been sustained.

The decree of the court below is reversed, and the cause remanded.