*Glasgow vs. Ridgeley & Allen.*

### GLASGOW vs. RIDGELEY & ALLEN.

1. Where there is a subscribing witness to an instrument, he must be called, or his absence accounted for; and without this, it is not competent to prove its execution even by the grantor.

2. Objections to the form of questions in depositions, must be made at the time the depositions are taken; it is too late to make them at the trial.

3. The act of 1843 "concerning landlords and tenants in St. Louis county," gives no lien, unless the rent be due and certain.

4. Where goods which have been conveyed by two mortgages are sold under an execution in favor of a third party, in an action of assumpsit for money had and received brought by the older mortgagees against the plaintiff in the execution, they are only entitled to recover the amount due on their mortgage, and not in addition the amount due on the junior mortgage.

### APPEAL from St. Louis Circuit Court.

SPALDING, *for Appellant, insists:*

1. The first and second questions asked by plaintiffs in the first deposition of Willey were leading and improper.

2. That the notes given in evidence as having been secured by mortgage of Willey to Norman Cutter, were improperly admitted, not being the same described.

3. The court improperly admitted the second deposition of Willey in evidence; the same witness having been previously examined on the same matter by the same party, in his first deposition, which had been read. 2 J. J. Marshall, 236; 17 John., 343; 4 Mason, 312.

*Glasgow* vs. *Ridgeley & Allen.*

4. The questions in said second deposition were leading and improper. The first is leading, and also objectionable, as requiring a witness to testify as to documents not before him, and as to the identity of them.

5. The mortgages were improperly admitted in evidence, not having been sufficiently proved—the subscribing witness not having been examined or accounted for. 1 Greenleaf's Ev., sec. 569, p. 636. That instruments must be proved by subscribing witness, for the reason that a *fact may be known to subscribing witness not known to obligor*, &c. Ibid., secs. 570, 571, 572; 1st vol. Starkie's Ev., p. 325. Where instrument purports to have subscribing witness, he must be called, or it must be shown that proof by him has become impossible. Ibid., p. 328-9. That if subscribing witness be dead, &c., proof of his hand is a sufficient proof of the instrument. Ibid., p. 320. Subscribing witness must be produced, and admission of party, or sworn admission in answer in chancery will not answer; and it holds in suits between third persons, as well as in suits in which party to instrument is party to suit, or whether instrument is foundation of action or collateral. That this strictness ought to be observed generally, and is undoubted law, see 3 John. R., 477; 11 Wend., 110; 3 Binney, 196; 8 East., 548; 4 East., 53; 6 N. H. Rep., 561; 3 Cowen & Hill's Notes, 1264.

The following cases are exactly in point: 9 John., 136; 5 Mo. R., 422; 4 Monroe, 39; Abbott vs. Plumb, Doug., 216.

6. The first instruction given for the plaintiff below is erroneous, in this: that it assumes that the giving of a mortgage by a tenant, on whose goods the rent is a lien, divests the landlord's lien, if the goods are delivered to the mortgagee, though they still remain on the premises. 5 Cow. R., 323, Reynolds vs. Shaler. That landlord may follow and distrain mortgaged goods, Acts of Assembly of 1842-3, p. 247, "an act concerning landlords and tenants in the county of St. Louis."

7. The third instruction given for plaintiffs below is erroneous. It assumes the law to be, that if there be a rent certain reserved, yet it ceases to be a lien when other premises are leased to same tenant by same landlord, at an uncertain rent. It even goes farther, for, although the proof was that payments were made by Willey more than sufficient to cover all the rent of the additional premises, so that all that was due when the distress warrant issued, was rent on the original lease, which was certain on the hypothesis of that instruction, and yet the jury are instructed there can be no seizure of the goods for rent.

8. The third instruction of plaintiffs below is erroneous. It directs the jury to find for plaintiffs the whole amount of the debt due to Cutter on his mortgage, not exceeding amount of money made by the sales of the property.

Now, the mortgage to Cutter comprehends other property besides that which is embraced in the mortgage to Ridgeley and Allen, and this instruction insists that Ridgeley & Allen shall recover, in their names, in this suit, the proceeds of the sale of the property not included in their mortgage, and to which they had shown no right.

9. The first three of defendant's instructions were improperly refused, particularly the third, which asserted that the lien for rent, if any there was, was not divested by execution of the mortgages, if the goods still remained on the premises. 1 Wend., 307. That suspension of proceedings against tenant, under distress, does not deprive landlord of right to pursue the goods distrained. 5 Cow., 323, Reynolds vs. Thaler.

10. The three last instructions asked by defendant, and refused by the court, should have been given, and especially the last.

11. The new trial prayed for should have been granted, for the reasons stated in the motion, the last of which was, that the recovery was too large, and the bill of exceptions shows that the recovery was for many articles not embraced in either mortgage. Milburn's recovery is not allowed.

12. The fourth instruction given for plaintiff is incorrect, and ought to have been considered in its order. It declares that there is no lien for rent till the rent is due. It says that the right to distrain does not exist unless the rent was due before the mortgage was made. I refer to the act of Assembly above, of 1842-3, p. 247.

LESLIE & FIELD, *for Appellees, insist:*

1. The mortgages were sufficiently proved without calling the subscribing witness. They were proved by the highest evidence, viz., the very person who made them. It is admitted that in many of the text books the rule is laid down in general and unqualified terms, that the subscribing witness must be called to prove the execution of an instrument, but all the cases, it is believed, will be found to be those where the instrument is sought to be proved against the party who made it, or where, in other cases, some inferior proof is offered. But in no case like the present has it ever been decided, as is confidently believed, that the instrument was not sufficiently proved by the party himself.

The cases are all collected in Cowen's notes to Phill. Ev.; 1264; 4 Bibb R., 442.

The reason that is sometimes given for requiring the production of the witness where the party has admitted the execution, i. e., that the witness may remember what the party has forgotten, is effectually exploded by this Court, in Moss vs. Anderson, 7 Mo. R., 337.

2. The mistake in the description of the notes in Cutter's mortgage, was properly explained by proof. 7 Cow. R., 13; 18 Pick. R., 455; see the cases collected on this point; Cow. notes to Phill. Ev., 1424.

3. The objections taken to some questions in the depositions, that they were *leading*, ought not to be listened to, because no objection was made at the taking on *that ground;* and whenever an objection is raised to the mere form of a question, the adversary ought to be apprised at the time of that particular ground, so that he may vary the form. Besides, it is insisted, that the questions are really not leading in their character.

The instructions given by the court were correct: the first instruction declares the lien of the mortgage superior to the distress warrant.

The account for rent, on which the warrant was founded, is for one gross sum, from April 6, 1843, to April 6, 1844. There was no evidence of its being due at all, except such as was furnished by the settlement of Willey, and in that, it is treated, likewise, as a gross sum due for the year.

The question arising on the face of the account addressed itself to the court, and no other decision could be made than that rent, which appeared by the landlord's affidavit to be due in April, must be postponed to mortgages made in March and January preceding. See the act in relation to landlords and tenants in St. Louis county, passed in 1842, giving the right to distrain only when rent is *due.*

The first instruction may also be supported on the principle asserted in the case of Field vs. Milburn, 9 Mo. R., for the lien of the landlord is not made at all exclusive by the law, and the property was actually taken into possession by the mortgagee before the lien was executed by a levy of the warrant.

The second instruction is justified by the plain language of the act. The right of distress only exists where the rent is "certain." See act 1842, relating to landlords and tenants; Valentine vs. Jackson, 9 Wend., 302; 25 Wend., 443. Some of the sections of the Missouri act, and this in particular, are literally borrowed from the N. Y. law.

The third instruction is merely asserting the same principle in different circumstances.

The fourth instruction follows the language of the act, and declares that the right to distrain does not arise till the rent was due.

The fifth instruction lays down the rule as to the measure of damages. The first mortgagee after forfeiture became owner of the goods at law. After satisfying his own debt, he would be answerable over to the second mortgagee for any surplus in his hands, and if the goods were illegally taken from him, he may recover to the extent of the damages sustained by him individually, and by any other person whose interests he might represent. See a case in Mass., directly in point; Chamberlain vs. Shaw, 18 Pick., 278.

The instructions asked by the defendant were all improper.

*Glasgow* vs. *Ridgeley & Allen.*

1. The landlord's warrant is assumed *per se* to be a sufficient justification for the seizure of the goods. But this cannot be so. The warrant, without the relation of landlord and tenant, the existence of a certain reservation of rent, and the same being due, is no better than waste paper.— See 9 Wend. Sup.

2. The second instruction is equally faulty, and for the same reason.

3. The third may or may not be true, but it has nothing to do with the question. The extent of the landlord's lien is of no importance; the only controversy is about the landlord's right to *distrain* under the actual circumstances of this case.

4, 5, 6. The three last instructions have been considered under the last instruction given by the court.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of assumpsit for goods sold and delivered, and money had and received. The plaintiffs had a verdict and judgment.

Upon the trial, it appeared that Walter Willey, on the 1st March, 1843, took possession of the Glasgow House, as tenant to the defendant, who was the proprietor of the same, and continued to occupy it until some time in August, 1844. On the 17th January, 1844, Willey executed a mortgage to the plaintiffs (Ridgeley & Allen) for the furniture of the Glasgow House, to secure them for their liability on a note executed January 18th, 1844, by Ridgeley, and endorsed by Willey and Allen. The note assumed this form, in compliance with certain bank regulations, but Willey received the money. On the 21st March, 1844, Willey executed a second mortgage of the same property, to Norman Cutter, to secure the payment of two notes given to them, one for $1761 05, and the other for $594 82. On the first August, 1844, Willey delivered possession of the furniture of the Glasgow House to Ridgeley and Allen, the mortgagees. This delivery was by handing them a chair in the name of the whole, and was in presence of witnesses. On the second August, the sheriff levied on the furniture under a distress warrant in favor of defendant, and afterwards sold it for $3499 30, and paid over to defendant $2319 18. On the 6th April, 1844, there was a settlement between Willey and defendant for the rent of the Glasgow House, in which Willey agreed that the amount of rent then due was $2319 18.

The plaintiff's testimony conduced to show that there was no agreement between Glasgow and Willey about the rent of the Glasgow House until after the mortgages to Ridgeley & Allen and Cutter. The defendant's testimony was offered to show that the rent had been agreed on before that time, and that the understanding between the parties was, that the rent was payable monthly. There was no written lease. It appeared that after Willey had gone into the Glasgow House, the defendant

rented to him a small building adjoining, to be used for purposes connected with the hotel. There was contradictory testimony as to what rent was agreed on for this building, and at what time it was ageed on.

The execution of the mortgages was proved by the grantor, although there was a subscribing witness, and he was not called, or his absence accounted for. An exception was taken on this point.

Two depositions of *Willey*, the grantor in the mortgages, were read. Objections were made to some of the statements in the first deposition, because they were answers to leading questions; and objections were also made to the reading of the second deposition, because it contained evidence relating to the same topics, about which the deponent had testified in his first deposition. Exceptions were saved on these points.

The court instructed the jury as follows :

1. If the jury believe that the mortgage to Ridgeley and Allen, which has been read in evidence, was taken in good faith for the purpose therein expressed, and the same afterwards became forfeited, and the goods therein mentioned, in fact, delivered to said Ridgeley and Allen, before the levy of the defendant's distress warrant; in such case, the title of the plaintiffs, under the mortgage, is superior to the right of the defendant, under the distress warrant.

2. If the jury find that the Glasgow House was leased by the defendant to Willey, and that no certain rent was agreed on between the parties until after the making of the mortgage to the plaintiffs, and that such mortgage was taken in good faith for the purposes expressed on its face, then the defendant had no right, as against the plaintiffs, to distrain said mortgaged property for the rent of said house.

3. Even if a certain rent was originally reserved and agreed on for the Glasgow House, yet, if, during the term, other premises were added to the leased premises, and said Willey was to pay rent for the whole, without any agreement as to the additional sum or the whole rent, and after the execution of the plaintiffs' mortgage, said Glasgow and Willey agreed on the amount of the whole rent, including the additions, the defendant cannot justify seizing the mortgaged property under his distress warrant for the rent thus settled after the execution of the mortgage.

4. Although a certain rent were reserved before the execution of said mortgage, the defendant's right to distrain for it must yield to the plaintiffs' right under the mortgage, unless such rent was in fact *due* before the making of the mortgage.

5. If the jury find for the plaintiffs, they will enquire whether the mortgage to Cutter was made in good faith, and for the purpose express-

ed on its face; and if so, the plaintiffs will be entitled to recover so much as is justly due to them by virtue of their mortgage, and to Cutter, under his mortgage; not exceeding, however, the amount of money received by defendant from the sales of the mortgaged property, and interest thereon from the commencement of this suit.

The court refused to give the following instructions, asked by the defendant:

1. That the landlord's warrant given in evidence is a sufficient authority for the sale of the goods that were owned by Walter Willey and were on the premises mentioned in said warrant, during the time that Willey was tenant of the defendant, if the goods remained on the premises.

2. That the landlord's warrant is a legal and valid authority on its face for the sale of any goods liable to be distrained for rent by the defendant, for rent due him as landlord of the premises mentioned therein.

3. That if there was any lien for rent, on the goods, or any of them in question, at the time of the execution of said mortgages, the same was not divested by said mortgages, but still might be enforced against the property, while it still remained on the premises, and the relation of landlord and tenant still existed between said Willey and the defendant.

4. That there can be no recovery in this case for the amount of the moneys received and mentioned in the mortgage to Cutter, or any part thereof.

5. That there can be no recovery in this case for the amount of money mentioned in the mortgage to Ridgeley and Allen, or any part thereof.

6. That the law raises no implied promise in favor of Ridgeley and Allen against the defendant to pay them the money due to Cutter from Willey on the mortgage to Cutter given in evidence.

A motion was made for a new trial upon the usual grounds, which was overruled, and the cause brought to this Court by appeal.

The first point we will consider is, the propriety of admitting the grantor to establish the execution of the mortgages. It is a settled rule of evidence, that where there is a subscribing witness to an instrument, he must be called to prove its execution, or his absence must be accounted for. This rule is based upon the reason that the parties, by selecting a subscribing witness, have mutually agreed to rest upon his testimony, in proof of the execution of the instrument and of the circumstances which then took place, and that he knows those facts which are probably unknown to others. Whatever may be thought of the applicability of these reasons to a case where the testimony of the grantor himself is offered, it appears to have been repeatedly adjudged that such a case

does not constitute an exception to the rule. Hollenbeck vs. Fleming, 6 Hill. R., 306; Johnson vs. Mason, 1 Esp. R., 89, Barry vs. Wilbourne, 2 Bailey R., 91; McMurtry & Peebles vs. Frank, 4 Mon. R., 39.

Many of the rules of evidence are merely arbitrary, and we are not authorized to sanction a variation from the rule in question, merely because the reasons upon which the rule was founded may be thought not very applicable to the case in which it is sought to be enforced. The rule, as established, is not in itself unreasonable, and no inconvenience is likely to result from a strict adherence to it.

The objections to the leading character of the interrogatories propounded to the deponent Willey, came too late at the trial. Had the objections been made at the time, the party taking his deposition might have framed his interrogatories so as to have avoided the objections.— There is no difference in this respect between depositions and oral testimony, and the principles adopted by this Court in relation to the latter, will apply to the former. This remark will also apply to the objection made to the admissibility of the second deposition of Willey.

There is nothing on the record to show any unsound exercise of discretion on the part of the court in admitting the second deposition, notwithstanding it related to facts about which the deponent had previously testified.

The construction which the court gave to the act of 1843, "concerning landlords and tenants in St. Louis county," is, in our opinion, the correct one. A lien is not given by that act except where the rent reserved is *certain*, and where it is *due*. That this construction of the law will somewhat impair its utility, and to some extent defeat the purposes usually sought to be attained by enactments of a similar character, may be conceded; but this circumstance alone cannot be allowed to control the plain letter of the law. Leaving out of view the language of the first section, which states it as the object of the law "to secure the payment of rents *due* the landlord," the provisions of the second, third and fourth sections seem to show conclusively that the legislature designed to give the lien only in cases where rents were due, and not before they were due. Those sections provide a mode by which the landlord may secure all the rent that is due, when an execution is levied o the goods upon the demised premises, but make no provision for any rent in arrear and *not due* when the levy is made. It is clearly deducible, from such a provision, that an execution would bind the goods, if levied before the rent was due. If so, there is no reason why a mortgage should not have the same operation. It would be quite as easy for the tenant to evade

the landlord's demand for rent by confessing a judgment and inviting the levy of an execution, within a few days of the period when the rent becomes due, as it would be to convey the goods to a mortgagee. It is evident that the statute would afford practically but little security to landlords, except in cases where the rent was made payable monthly or at some short intervals. As the law was confined to St. Louis county, it is probable that the knowledge which the Legislature had, that this was the usual mode of leasing in St. Louis, may have induced a limitation of the lien to cases where the rent was due.

The third instruction given by the court substantially declares, that although certain rent might have been reserved for the Glasgow House, yet, if additional premises were rented by Glasgow to Willey, at an uncertain rent, the whole rent was thus rendered uncertain. We are unable to see how this consequence follows, from the premises assumed.— If the Glasgow House was rented for a sum certain, upon what principle will another contract for another house affect the first contract? The entire rent which will accrue to Glasgow on the two contracts will undoubtedly, upon the supposition made, be uncertain; but this uncertainty arises only from the character of the second contract, and not of the first. If the first contract is understood to be a subsisting one at the time of the second, and the second is not substituted for it, nor inconsistent with it, each contract must be interpreted according to its own terms, and neither will be affected by the other. The case of Lawrence vs. French (25 Wend., 445) is very dissimilar to the present. That was a case where premises were demised at a certain rent, but the tenant was deprived of the use of a portion of them by an act or omission of the landlord, amounting, in law, to an eviction, and it was held that the landlord could not distrain for the proportional amount of rent due. The court considered that the eviction from part of the premises demised, defeated the contract; and that, although the tenant was still liable for his use and occupation of the residue, it was only upon an implication of law that he would pay for such use and occupation so much as it should be worth. The rent was in this way uncertain, and therefore the remedy by distress was denied. But what application has this principle to a case like the present, where there has been no eviction, but merely an additional contract for additional premises? It does not follow, because an additional building has been leased at an uncertain rent, that the rent of the premises originally demised has been therefore rendered uncertain. It may be so, certainly, if the second contract has been substituted for the first; but the contracts may be independent, and both subsist-

ing at the same time. The fact that the additional premises are adjacent to those originally demised, and used for the same purposes, cannot change the character of the two contracts. The question will still be, whether the last contract has been substituted for the first, or whether they are both subsisting and independent of each other.

The fifth instruction allowed the plaintiffs to recover, not only the amount which was due to them on their mortgage, but the amount which was due to Cutter on his mortgage, provided the other facts, to which the attention of the jury had been directed, were for the plaintiffs. We cannot perceive the propriety of this instruction. Had the plaintiffs, as the legal owners of the goods mortgaged, brought an action to recover them specifically, or their value, it may be that their responsibility over to the younger mortgagee, would have authorized their recovery to the full extent of both the debts. But the action of assumpsit is to recover the money which the defendant has received for the use of the plaintiffs, and which, *ex æquo bono,* belongs to them. Are they responsible over to Cutter for moneys collected in this form of action? Surely not. They are sueing for money which they allege Glasgow has received, and which equitably belongs to them. It is contrary to every principle applicable to all our forms of action, that a plaintiff should be permitted to recover merely because the defendant has no title. If the defendant be not entitled to the balance of the value, that is no reason why the plaintiff should recover it, unless the plaintiff, by the position he occupies, be responsible over to the party to whom such balance is due. Such might be the case in an action of detinue, replevin, or trover; but in this form of action, the plaintiffs are not sueing for what is due to others, but to themselves.

The other Judges concurring, judgment reversed and the cause remanded.