SMITH, TRUSTEE, Respondent, v. HUTCHINGS, Appellant.

1. The fourth section of the act concerning fraudulent conveyances, (R. C. 1845, p. 526; R. C. 1855, p. 803,) making conveyances of chattels void as to creditors and purchasers unless accompanied by possession in the grantee or unless duly recorded, as there directed, has no extra territorial operation; it does not apply to deeds made in another state, where all the parties to them and the property conveyed by them are located at the date of their execution. If the deed is valid by the law of the place where made, it is valid in this state.

2. Whether leading questions may be put to witnesses testifying in a cause is discretionary with the court; so also whether the answers to leading questions in depositions shall be received.

## Appeal from Ray Circuit Court.

In the year 1846, John S. Bright, then living in Mercer county, Kentucky, executed a deed conveying, together with other property, a slave named Fanny to Harold F. Smith, also a resident of Kentucky, in trust for the wife and children of the said Bright. The said slave was to be held by said trustee for the use and benefit of the said wife and children, the trustee being directed to dispose of, sell and control said slave and other property according to the written directions of the wife, she never taking absolutely more than a child's part. This deed was recorded in Mercer county, Kentucky, on the day of its date. After the execution of said deed the said slave Fanny gave birth, in Kentucky, to a boy named Ben, the slave in controversy. In 1850, the said

Bright with his family moved to and settled in Ray county, Missouri, bringing said slave Fanny and the boy Ben along with him. On the 15th of August, 1854, Bright and his wife Louisa J. Bright, joined in a bill of sale under seal of said boy Ben to Hovey Hutchings. The deed of trust, made in 1846 to Smith as trustee, was not recorded in Ray county until December 13, 1854. From the date of said deed of trust to the date of said bill of sale to Hutchings, Bright was in possession, in Kentucky and Missouri, of said slave Fanny, and of the boy Ben after his birth. Said Bright has since died.

This action is brought by the said Smith, as trustee for the widow and children of said Bright, against the said Hutchings, to recover possession of said boy Ben.

At the trial the defendant objected to the reading of the answers to certain leading questions contained in depositions read by plaintiff. The court permitted the questions and answers to be read.

The court refused all the instructions asked by both plaintiff and defendant, and of its own motion gave the following : " 1. The deed of trust read in evidence vested in Harold F. Smith, as trustee for Mrs. Louisa-J. Bright, wife of John S. Bright, and their child, the title to the negro slave Fanny mentioned in said deed of trust; and the other children of the said John S. Bright and Louisa J. Bright, born after the execution of the said deed of trust, became beneficially interested with their mother and the first mentioned child, as they were severally born, in the said slave Fanny. 2. If the said deed of trust was executed in the county of Mercer, in the state of Kentucky, and was recorded in the office of the recorder of said county in Kentucky, while the said beneficiaries resided in said county, and while the trust property was in said county and state, the subsequent removal of Bright and his family with the trust property to the county of Ray, in the state of Missouri, and the failure to have the said deed of trust recorded in the office of the recorder of the county of Ray, in the state of Missouri, would not affect

the title acquired by the deed of trust. 3. If the jury find that the negro slave Ben sued for was the child of the said slave Fanny and that he was born while Fanny was so held in trust, then the title to Ben vested in the trustee for the persons beneficially interested under said deed of trust. 4. According to the provisions of the deed of trust, Louisa J. Bright, wife of John S. Bright, had an interest equal to a child's part in the trust property, and she had the right under said deed of trust to dispose of her said interest, but she could not by any act of hers, without the intervention of the trustee, affect the interests of her children. 5. The bill of sale read in evidence executed by John S. Bright and Louisa J. Bright his wife, bars the title to one undivided fifth part of the slave Ben owned by Louisa J. Bright, and leaves the interests of the other parties as they stood before the execution of the said bill of sale. 6. If the jury find for the plaintiff, they will find four-fifths of the value of the said slave Ben at the commencement of the suit, with interest at six per cent. per annum to this time, to be recovered by the trustee for the use of the children of John S. Bright and Louisa J. Bright."

*Ryland & Son,* for appellant.

I. The court erred in refusing to suppress the leading questions and the answers thereto in the depositions read in evidence. The questions were clearly leading. (1 Greenl. Ev. § 424; 1 Stark. 150; 1 Phill. Ev. 268; 4 Wend. 229.) The cases of Glasgow v. Ridgley, 11 Mo. 34, and Walsh v. Agnew, 12 Mo. 530, no longer afford any rule of action on this subject. (R. C. 1855, p. 659, § 30.) The court ought to have given the instructions asked in behalf of defendant. The sale of the negro by Bright was sanctioned by Mrs. Bright, the *cestui que* trust. Plaintiff did not file the deed of trust for record in Ray county until more than four years after the negro was brought to this state. The sale ought to be effectual to pass the title to defendant. This deed of trust should have been recorded in the county in which the

property was placed. This not having been done, and the possessor having sold the property to an innocent purchaser, the title passed. The instructions given were erroneous.

NAPTON, Judge, delivered the opinion of the court.

We are not called upon in this case to express any opinion in relation to so much of the instruction given by the circuit court upon the trial as relates to the title of Mrs. Bright. The instruction declared that Mrs. Bright parted with her interest in the slave sued for by joining in the bill of sale, and as the judgment is acquiesced in by the party representing her interest, the propriety of the direction is not a matter for our consideration.

But it is insisted by the party complaining that the instruction should have further declared that the sale by the husband passed the title of the children, or that their title was lost by the failure of the trustee to record the deed in Ray county.

This subject has been so often before this court that it is not necessary to go into any detailed examination of it here. The fourth section of the act concerning fraudulent conveyances was not designed to have any extra territorial operation. It does not apply to deeds made in Kentucky or Virginia, where all the parties to them, and the property conveyed by them, are located at the date of their execution. When the title passes by the law of the country where the deed is made, and where the property is and the parties reside, it is good everywhere else, upon every principle of international comity, unless the policy of the state, to which the property is brought and where the controversy arises, should induce a different rule. Our legislature has not thought proper to change or modify this general principle; and although experience may show that many frauds are committed for want of such enactments, it may be doubted whether the protection furnished to purchasers by such a law would not be more than counterbalanced by the gross injustice done to defenceless women and children. The rule of

*caveat emptor* is the well established and generally known principle of the common law, yet it occasionally works injustice in other cases besides the class we are now speaking of. When a man is willing to defraud his wife and children by undertaking to sell property which he knows is theirs and to which he is conscious he has no title, there must be recklessness, improvidence, or want of honesty, or all combined; and this character will usually show itself in other acts, so that the purchaser who deals with such a person ought to be on his guard. If the vendor is a stranger to the vendee, there is the greater necessity of watchfulness on the part of the buyer. The exercise of ordinary diligence will usually lead to some suspicions of the truth. Here, the defendant, purchasing a negro boy from Bright, in whom he alleges was the sole title, requires the wife to join in the bill of sale. This circumstance shows that the wife was believed to have an interest, and that was sufficient to put the purchaser upon inquiry.

In relation to the leading questions found in the depositions, we do not consider that the court was bound to suppress the answers, for this reason alone. The form in which questions to witnesses are put must be regulated by the court which tries the case, and whether the answers shall be received when in the form of depositions is a matter of discretion. It is not a matter upon which error can be assigned. We do not understand the thirtieth section of the act concerning depositions in the revised code of 1855, (p. 659,) as intended to change this practice, and overturn the decisions of this court in the cases of Glasgow v. Ridgley, 11 Mo. 34, and Walsh v. Agnew, 12 Mo. 520.

With the concurrence of the other judges, the judgment is affirmed.