Mr. Justice Westcott
delivered the opinion of the court.
The first question which we examine in this case is raised by the last assignment of error.
The defendant asked the court to give twelve instructions. The court ruled as follows:: “All but the first and second of these instructions refused. The first and second given.” The record then continues: “Defendant’s attorneys excepted to the ruling of the court, excepting as to first and second.” Then follows this recital in the bill of exceptions: “The court then gave oral instructions to the jury, saying he would afterwards reduce his instructions to writing.” The plaintiff’s attorney asked the court to give instructions to the jury, which the judge read and gave to the jury, saying “they were substantially the instructions he had already given to the jury, and adopting them as the instructions of the court.” To the instructions of the plaintiff thus given the defendant objected and excepted in language as follows: “We object to the instructions and except thereto to each and every instruction given by the judge as being contrary to law.”
The error assigned upon this record is as follows: “The court erred in giving oral instructions to the jury, and in not sealing and signing the instructions given; also in not declaring in writing to the jury his ruling on the instructions presented by defendant’s attorneys and refused by the court, and in not pronouncing, the same to the jury as refused.”
Examining carefully the exceptions taken in the Circuit Court, during the trial, to the instructions, it will be seen that none of these grounds are there urged against them; and the first question which arises is, was it not the duty of defendant’s counsel to except to the charges there, upon Hie grounds now urged here, and whether failing so to do he has not waived the error, if error there was?
We think the rule in a case of this character is that a party cannot, by his silence in the Circuit Court, waive the failure of the judge to put his instructions in writing, or to sign and seal them, or to do other merely formal acts of this character, and aftey having had his chance before the jury, urge upon a motion for a new trial, or here, for the first time, the omission. 16 Fla., 368.
In criminal cases under the statute of January 4, 1848, Chap. 138, this court has repeatedly held that the failure of the judge to reduce his charge to writing, and; as written, to give it to the jfiry was error, and that without an exception. ( 9 Fla., 517; 13 Fla., 649; Long vs. The State, 11 Fla., 299.) This followed because the statute expressly provided that a failure to reduce the charge to writing in “all criminal cases,” should “be deemed and construed to be error, from which a writ of error might be prayed as of right.”
I do not understand such to have been the ruling as to charges in civil cases, as to which there was no such pro *205 vision of the statute. The duty of the judge in fhé matter of giving instructions in civil cases was, anterior to the statute of 1877, Chap. 2096, Laws, defined by Chap. 140, Laws, which contained no such provision as that contained in the act regulating proceedings in criminal cases, whereby a failure to reduce the charge to writing was to be deemed and construed to be error, from which a writ of error might be prayed as of right.
Chapter 140, Laws, was examined by this court first in the case of Doggett vs. Jordan, 2 % Fla., 551. Upon reference to that case it will be found that “exceptions were taken to the whole of the charge, and that an important portion of it” (the charge) “does not appear.” The Circuit Court in that case had' not reduced to writing and incorporated in its charge what it instructed the Jury as to the law of partnership, and such action was excepted to on the ground of this omission. In the case of Friedenburg vs. Robinson, 14 Fla., 145, which was a civil case, the judge refused the instructions as asked for, but after maldng in-terlineations, expressing with the original text his views ~of the law, he gave them. To this refusal, and to this interlineation, the defendant excepted. There was, therefore, here an exception which properly brought the matter to the attention of the Circuit Judge upon the motion for a new trial, as well as to the intention of this court upon the appeal. "We can find no civil case where the question as to the necessity for an exception in such case was raised and expressly decided. These cases, in which the matter was considered, show that an exception was taken. With this brief review of the civil cases arising under the statutes stated, we come to the consideration of the act of March 2, 1877, Chap. 2096, Laws.
After a careful examination of its provisions we feel satisfied that it was a revision of the acts of 1848, Chaps. 138 and 140, so far as they relate to charges or instructions given by the court in civil and criminal cases, and that section 8 of the act of January 4, 1848, and the entire act of January 3, 1848, are repealed. The first section of Chap. 2096 prescribes the general rule as to charges embracing both subject-matter and form, in all cases, civil and criminal. The second section, which is really nothing more than a proviso to the first, limits the general rule requiring written charges prescribed in the first section.
It authorizes oral charges in all appeals from justices of the peace, and in all criminal cases other than capital felonies, unless request is made for written instructions as therein authorized. This request is to be made before the evidence is closed, the purpose being to give the judge time to prepare the instructions in writing. The instructions of the court should therefore be in writing, as required by the first and third sections, in all capital cases, and in all civil cases not being appeals from judgments of justices of the peace.
The act of January 3, 1848, being repealed, as we think, by the act of March, 1877, so much of the act of January 3, 1848, as requires a charge to be written out before it is delivered, and to be delivered as written, ceases to be operative.
In this case, by reference to the recital in the "bill of exceptions, it will be seen that the judge did deliver oral charges to the jury; that no exception was taken to them upon this ground, and that the judge subsequently adopted written instructions offered by the plaintiff, saying “they were substantially the instructions already given.” The instructions given, therefore, upon which the jury had' a right to rely, and which were announced as the law to control them, were reduced to writing, and thus delivered. There was, therefore, in our view, a complete compliance with the statute of 1877, so far as it requires written instructions. The instructions, as given and received by the jury, were, within the meaning of the statute, wholly in writing. From an examination of the recitals of the bill of exceptions, as quoted, it will be seen that no exception was taken during the trial to the instructions refused or given in this case upon the ground that they were not sealbd* and signed by the judge. So far as the requirement to file' them immediately after were delivered is concerned, that was done. The statute requires that the instructions shall be signed and sealed by the judge, and be by him filed in the case, “and form a part of the record in the case.” It might be contended that the instructions in this case, not being thus filed and sealed, constituted no part of the record; but we do not think such is the case. If neither party in the case requires or requests the judge to comply with this technical formality and thus waives it, it does not prevent him from objecting upon other grounds, making the instructions and his exceptions thereto a part of the bill of exceptions. The parties have a right to waive the formal requirement. If they do not except upon that ground;, but let the case go to the jury upon unsealed instructions as to the law, at the same time taking other exceptions, they will be held to waive the signing and sealing; and yet, if they have exceptions upon other grounds, and their exceptions and the charge are made a part of the record by bill of exceptions, and such of the testimony as is necessary is embraced in the bill of exceptions, they will be heard upon appeal to this extent. As a matter of course, upon an exception on the ground that the charge Í3 not signed and sealed, or upon like grounds, the judge may rectify his mistake before the jury retires. The general rule is that in order to review a charge in this court upon the ground that it is not law, there must be an exception to it. 16 Fla., 379, 565; 14 Fla., 518; 15 How., 160.
The reasons for the rule are .that unless such exception is taken the erroT is waived, and because one party will not be permitted to thus surprise his adversary. The same rule should apply to this case, as the like reasons for its. operation exist. Our attention, in this connection, has been called to the opinion of this court in the case of Baker against The State, 17 Fla., 410. That case, it will be found ppon examination, went off upon other grounds. It is there said that omissions of the judge to sign and seal the instructions, or a failure to declare to the jury, in writing, his ruling, as required by the act, were fatal errors. We think this correct, but we did" not mean, in the face of all antecedent decisions of this court and of the rule prevailing in the Supreme Court of the United States, to say that no exception was necessary to bring the matter to -our attention under the provisions of the act of 1877. Our purpose was .simply to call attention to the requirements of the act, in order that the court in the new trial awarded in that case would comply with them.
There are other errors assigned in this case, but the brief of counsel for appellant is restricted to a discussion of the error which we have disposed of. This is an abandonment of the other errors assigned;, 'and while it is within the power of the court to look beyond the brief of counsel and to examine other errors, still such is not the practice of appellate courts thus to do, unless the record discloses a case of want of jurisdiction, or the case is attended with peculiar circumstances calling for such action. Our rule (Ño. 15) requires that the brief shall contain the points of law and fact to be relied upon in árgument with a reference to the authorities intended to be, cited. The rule we have stated prevails in appellate tribunals, having like rules to this court. 31 Ala., 612; 10 Ala., 109; 6 Ind., 5; 7 Cranch, 97; 15 Wall., 1; 17 Wall., 19.
Upon examination, while we do not think this a case constituting an exception to the ruin, still as our conclusion *206 -is the same at all events, we will examine the other errors assigned'.
The second-And sixth errors assigned are based upon exceptions to the judge permitting leading questions to be asked.
This is the exercise oí a discretion not reviewable here, 16 Fla., 373; 3 Allen, 465; 2 Gray, 282; 7 Ala., 371; 43 N. H., 65; 30 Mo., 380; 13 Ala., 490; 37 Maine, 3461; 36 Maine, 137; 9 Conn., 275; 20 Ill. 35; 20 N. Y., 170; 1 Greenleaf Evidence, §435.
The court in this case gave two of the instructions asked by defendant, refusing to give nine others requested. As covering the whole case as presented under the tstimony, the judge gave the five instructions asked for by the plaintiff. Simply rejecting the instructions asked for by the defendant under these circumstances, even though some of them stated the law correctly, would not be ground to reverse the judgment, where, upon a fair and full view of the case, the verdict of the jury was conformable to the law and the evidence, and where, as in this case, the law was fully and correctly stated to the jury. (12 Fla., 575.) Says the Supreme Court of the United States, 3 Otto, 291: “It is the settled law in this court, that if the charge given by the court below covers the entire case and submits it properly to the jury, such court may refuse to give further instructions.” (7 Wall., 565.) Where a set of instructions is offered to a judge, by both plaintiff and defendant, the judge may say to the jury, after reading such set of instructions, I refuse to give those offered by the plaintiff or defendant, (as the case may be,) or I give those offered by the plaintiff or defendant, (as the case may be,) and if those given cover the law of the case so far as stated in both sets of instruction's, the failure to give the others, although they too may declare the law, is not error. Where we see plainly that the testimony and the law, as applied thereto, justifies the verdict, and that no injury could have properly resulted to the party by the action of the court excepted to, we will not reverse the judgment in order that there may be had a more formal trial to result, if the ‘jury follows the law and the evidence, in the same verdict. This court has indeed gone further than this, having held that even where there are erroneous instructions the judgment will not be reversed, if the -verdict is sustained by the law and the evidence. 6 Fla., 515; 5 Fla., 276; 8 Fla., 398; 2 Durn. and E., 4.
We will examine this case upon the evidence and instructions. What is the case?
A person, not Doctor Samuel VanMeter, sends from Jacksonville, Florida, a telegram in the Doctor’s name to the national bank of Charleston, Illinois, about the first of March, A. D. 1879, requesting the bank to send $500 by express, care of the Arlington Hotel, Gainesville, Florida. The telegram was exhibited to John VanMeter, a son of the Doctor, and his agent at Charleston,- who executed a note for $500 (which was subsequently paid by Doctor Van-Meter) and directed the bank to send the money. The money was placed in an express envelope, sealed with the seal of the bank and addressed to Dr. S. or Dr. Samuel VanMeter, Gainesville, Florida, at the Arlington Hotel or house, and the package delivered to the American Express Company at Charleston, Illinois, for transmission to Gains-ville, Florida, the point of destination. As one and last of the express companies on the line, the Southern Express Company received the package for transportation and delivery. This company received the package and delivered it to a party other than Dr. Samuel VanMeter, who (Dr. V.) subsequently, after its delivery to the wrong person demanded the package of the agent of the express company, who could not and did not deliver it. There is some conflict in the evidence as to the facts attending the delivery. The company’s agent Cox testifies substantially that on the 7th of March, A. D. 1879, he received by express a package marked Dr. Samuel VanMeter, at or care of the Arlington, a hotel in Gainesville, Florida; tjiat on the next day he asked of the proprietor of this hotel if there was not such a man as the Doctor there; that the proprietor said there was not, but he had letters and a telegram from him, and was expecting him every day; that he exhibited the package of money to the proprietor; that upon going to the evening train, George S. Huff, proprietor of the Varnum Hotel, in Gainesville, asked him if he had a package for Dr. Samuel VanMeter; that the witness answered yes; that Mr. H. said he (Dr. V.) is here now, and is going to stop at the Varnum Hotel; that witness said I thought he was going to stop at the Arlington; that Mr. H. said no; that Mr. H., after getting .VanMeter’s baggage off, then came to me and asked me if I would not come and bring the .package to the Varnum Hotel; that witness said no, he would not have time, but if he would bring Dr. VanMeter to his office he would deliver it; that after being at his office ten minutes Huff ánd VanMeter walked in; that the witness was at the further end of the store waiting on customers and Huff halloed to him and said he would take that package now; that witness said I suppose you want VanMeter’s package, and both said yes; that Dr. Van-Meter signed the receipt for the package, paid $4.75 charges on it, counted the money and said it was all right; that while he was counting the money Huff took the envelope and tore it to pieces; that he afterwards received a telegram directing him not to deliver; that witness knew George S. Huff for a year before this occurred; that he stands well in the community, and that he would take his word in anything; that witness’ instructions from the express company were that if the parties were not known to me, not to deliver packages until the parties were identified by a person I knew. The witness then states that about a month afterwards another person applied for the package. Upon cross-examination, this witness states that he did not know that the man to whom he delivered the package had received mail matter from the Arlington Hotel, and that he would not have delivered it. if it had been marked to the care of the Arlington; that when packages were “to care” he delivered only to care, when “at” to the person calling for them; when directed “at” it goes to any one applying for it.
Mr. George S. Huff, the proprietor of the Varnum Hotel, as to delivery and identification, swore substantially that he met a party representing himself to be Dr. Samuel v an-Meter on the train at Gainesville, on the 8th day of March, 1879, and that the man stopped at the Varnum Hotel, of which he, witness, was proprietor, from the 8th to the 10th of March; that this party at the train asked witness to enquire of the express agent whether there was a money package for him* in the office, or whether it had been taken over to the Arlington House; that he gave witness his name on a card, and witness asked the agent, Mr. Cox, concerning the package. He said the package was at the express office. I asked him to bring it to the hotel that evening. He said he would not have time to do so. I said then the gentleman would have to come over after it. This conversation occurred at the railroad depot. The party representing himself as Dr. V. then went with witness to the Varnum Hotel, and wrote an order to the Arlington House for his letters, which he said had been sent there for him. After this we went to the express office, where we found the agent, Mr; Cox, selling some groceries. I said, across the room, that this gentleman was after that money package; that he thinks these were the exact word's he used; that when the agent' got through waiting on the customer, he came across to the safe, near the desk, took from the safe a package, I think laid it on the desk; then *207 the man signed the book; that the man counted the money in my presence, said there was five hundred dollars, and remarked, I think, that -it is all right. This witness testifies, further: that he knew nothing of the man except what he saw and heard from him while in his company; that he was not sufficiently acquainted With him to vouch for his identity to the express agent; that the'agent at no time before the .delivery of the package asked whether he knew the man to be the person he represented himself to be, nor did he ask me at any time before delivering the package whether I knew, this person to be Dr. S. YanMetéf. The witness states further that the agent did not, in his presence, demand of the party any identification; that he was near enough to have heard it if made, unless the demand was in a low tone of ^oice; nor did' he see the man produce any document to identify himself; nor was there, so far as he saw, any person from the Arlington House present; that he became acquainted with the man while drumming on the train for his hotel, and spoke to him with a view to that business; he spoke of his mail matter, and of a money package which had been directed in the care of the Arlington House; he wished to know whether it had arrived; I told him I would ascertain from the express agent at the depot if he would give me his name; he wrote his name on the back of my card, “S. YanMeter;” a similar name was on his letters and papers, and he so registered at the hotel. The witness states that he does not remember introducing him to any one before going to the express office, and that it was about three-fourths of an hour after he met Mr. Cox at the depot that he went with the stranger to the express office. When we arrived there, as well as I can remember, I said: "this gentleman (meaning Mr. YanMeter) is here for the money.” I went with him simply to extend the courtesy of the hotel; I did not tell.Mr. Oox that the party had mail matter at the Arlington. Some of the testimony of this witness, which was objected to, we have omitted, it being matter^of opinion or matter otherwise improper.
Thus stating the case, and reciting the evidence, so far as there is any conflict, the only question is,‘does the evidence disclose a performance of its duty by the Southern Express Company? It appears that it transported the package to its place of destination, but that it delivered it to a person not its owner, and not the person to whom it was addressed. The only question in the case was whether there was that care exercised in the matter of identification and delivery here which the law requires. Even accepting the testimony of the agent of the express Company, there was not such care exercised here as the law requires. It is shown that the agent expected the party to whom the package was addressed to arrive from another place; that he was not a resident of the town at which the package was to be delivered; that the agent did not know him. This agent meets the party assuming to be-the person to whom the-package is addressed at the train at the depot. While there the proprietor df a hotel, other than- that at or to the care of which the package waa directed, asks him if he had a package for‘Doctor Samuel YanMeter, and, upon his replying in the affirmative, the hotel-keeper says he is here now. Upon being asked to bring the package to the hotel, the agent declines to, do so; not for want of identification, but because he would not have time. The agent tells the hotel-keeper that if he would bring Dr. Y. to his office he would deliver the package. When the party comes to the office to get the package, the agent delivers it without any further identification than that the person who accompanies him, a hotel-keeper, known to the agent as a reliable person, with whom the stranger is stopping, treats- the stranger as Dr. YanMeter, the hotel-keeper not stating that he knew the stranger to be the person he represented himself to be, and without any identification at all. Had the agent asked the hotel-keeper whether he knew this party to be the person he represented himself to be, and how he knew him, the agent would have been at once informed of the extent of the ,hotel-keeper’s knowledge, and that was that he only knew that the man 'so represented himself. The express company was a bailee of the property, under an obligation to deliver to the rightful owner, and its delivery to a stranger, not the rightful owner, cannot be justified upon the ground that a keeper of a hotel at the point of destination, known to the agent, and in whom he has confidence, simply treated the party as the person entitled to delivery, the agent at the same time knowing the party to whom he delivered the package was a stranger who had just arrived in the town.
This being the first case of this character in this State, we do not deem an examination of the instructions given in this case either improper or inappropriate. They were each excepted to.
The first instruction was in effect, that the Southern Express Company, though it may not have been the first carrier to which the money was delivered, yet if it received the money it was bound to deliver it in accordance With the address on the package containing it, and if it delivered it elsewhere than as addressed, or to another person, the company is liable for any consequent loss or damage.
That thus to deliver the package is generally the duty of an express company receiving it for transportation to the point of destination, its line extending to the point of destination, we think cannot be reasonably denied. It is a common carrier responsible for subsidiary means of transportation. (97 Mass., 124; 3 Otto, 174.) And the rule now prevailing in most of the States (an able commentator on the law of carriers says in all except the State of Georgia, 38 Ga., 37, 519; Hutchinson’s Law of Carriers, §150,) is that the owner may proceed against the carrier m fault in causing the loss or damage. (32 Ill., 116; 49 H. H., 9; 53 Ala., 19.) This rule differs from the English rule, and it may perhaps be difficult to explain it in view of the fact that there is no privity of contract between the owner and the last carrier receiving the package, but as it "commends itself upon grounds of both justice and convenience,” and is the general law of carriers in the United States, we think it should prevail here.
The next instruction was in substance that the express company, without reference to the party who may have ordered the money sent, or who may have telegraphed for it, was bound to- deliver it to the plaintiff if it Was sent to him and he was the owner. This instruction, viewed., in reference to the testimony, is nothing more than that a forged telegram is no excuse for the delivery to a parly not the owner, and to whom it was the contract of the carrier to deliver it.
Notwithstanding the forgbd telegram, this carrier, in making a personal delivery, was bound by law to deliver to the person to whom the package was addressed* he being its true owner. (25 Ind., 492; 29 Ind., 27.) An express company belongs to that class of carriers who undertake to mpke a personal delivery of the goods to the consignee, and it is held to great strictness in the performance of this duty. It is the settled doctrine of England and of this country that there must be an actual delivery to the proper person at his residence or place of business, to .his number, or to the party in whose care, addressed, and in no other way can the carrier discharge his responsibility, ex- ■ cept by proving that he has performed such engagement, or has been excused from the performance of it, or been prevented by the act of God, or a public enemy. (6 Bar. & Aid., 52; 3 Brod. & Bing., 177; 2 Kent Com., 604; 23 Ill., 201; 7 Wis., 1; 99 Mass., 259; 113 280; 45 N. Y., *208 13; 50 Ala., 350; 72 Penn. State, 274.) A modification of the rule as to personal delivery is sometimes sustained upon the ground of custom or usage, but nothing of that kind enters- into this case.
The third instruction is to the effect that the company here was bound to deliver unless prevented' by the act of God or the public enemy; that no act that is done by human agency will excuse it from so doing; that the carrier is bound under the law to deliver to the proper person, and that a delivery by mistake to the wrong person does not excuse. This is the general rule. The fourth instruction is in principle embraced in the others, and we see no necessity for its extended examination.
The fifth and last instruction is substantially that the address upon a package delivered to a common carrier, is of the very essence of the contract between the carrier and the sender of the package and of the person to whom it is sent, and if the carrier delivers the package to any other point, or to any other person than at the exact point, or to the identical person to whom the package is addressed, the carrier is liable for any loss sustained.
Goods thus forwarded by express must be delivered in accordance with the directions upon the-package containing them, and in this view this direction may be regarded as a part of the contract. This is the general rule applicable to this c^se. 55 Barb., 443; 45 N. Y., 13; 49 Ib., 442; 5 Duer, 55.
Judgment affirmed.